THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* JOSEPH CAMPANARO, Alias JOSEPH CARONE, Appellant.

First Department, March 30, 1928.

Crimes — manslaughter, first degree — defendant was indicted for murder, first degree — conviction not against evidence — credibility of witnesses for prosecution was for jury — trial — court did not unduly interfere with examination — cross-examination not unfairly limited — jury were not coerced into bringing in verdict.

The defendant was indicted for murder in the first degree and was convicted of manslaughter in the first degree. The crime was committed on June 23, 1923, but the defendant was not arrested nor the indictment returned until the fall of 1926. While the evidence is conflicting on the question of whether or not the defendant fled after the crime was committed, there being some evidence that he did return to his place of habitation shortly thereafter, the jury were at liberty under the peculiar circumstances to believe that he, though guilty, would feel safe in his accustomed haunts.

The principal witnesses against the defendant were two women of bad repute who claimed that they did not tell about the murder before because of a desire not to become mixed up in the affair. The defendant concededly was at the scene of the crime, and notwithstanding there is some conflicting evidence

as to his precise movements at or about that time and as to who fired the shots which killed the victim, nevertheless, a pure question of fact was presented and the jury were justified in returning a verdict against the defendant.

If the jury believed that the defendant was guilty it was not necessary to show a motive for his act.

The credibility of the witnesses for the prosecution was for the jury to determine and the mere fact that they were women of ill repute did not require the jury to reject their testimony.

Much of the testimony was taken through an interpreter and it was necessary for the court at times to interfere for the purpose of shortening the answers and to hold the case within its proper limits. The record does not show any undue or unfair interference by the court and indeed there was no protest made by the defendant's counsel against the action of the court.

The claim by the defendant's counsel that his cross-examination was unfairly limited finds no support in the record and there was no abuse of discretion on the part of the judge in this respect.

Defendant's counsel in his summation stated that the assistant district attorney had been very fair in the prosecution and that he had no fault to find with any one. In view of that statement it would seem that his present contention that the judge was unfair and that the defendant was otherwise denied his proper rights was an afterthought.

The jury were not coerced into bringing in a verdict. It appears that after the jury had been out for nearly five hours during which time they had eaten dinner, they returned with a statement that they were deadlocked. The court, as it was its duty, advised them of the necessity of reaching an agreement if possible and also gave what the defendant's counsel refers to as a supplemental charge in which he contends that the court favored the prosecution. However, only one exception was taken in reference to misquoted testimony and the court stated to the jury that their recollection of the testimony controlled rather than the recollection of the court. Later the jury were recalled at the request of the defendant's counsel and he was permitted after the court had stated that counsel claimed that the court had misquoted the testimony, to read a part of the testimony by one of the witnesses which defendant's counsel claimed was misquoted. Any error claimed by possible misquoting of testimony was thereby corrected. The jury again retired and at one-forty-five A. M. sent in a communication that they were still hopelessly deadlocked. They were then locked up for the night and at eleven-fifteen A. M. the next morning they returned a verdict.

APPEAL by the defendant from a judgment of the Court of General Sessions of the County of New York, rendered on the 7th day of April, 1927, convicting him of the crime of manslaughter in the first degree.

*Samuel Dickstein* of counsel [*Leonard A. Snitkin* and *Leo H. Klugherz* with him on the brief], for the appellant.

*Robert C. Taylor, Assistant District Attorney,* of counsel [*Joab H. Banton, District Attorney*], for the respondent.

O'MALLEY, J. The indictment was for murder in the first degree, charging the defendant with having shot and killed one James Lamantia in front of 133 Mott street in the city of New

York on the early morning of June 23, 1923. The defendant was not apprehended until October, 1926, nor the indictment filed until November twelfth of that year. However, there was evidence tending to show that the defendant was under suspicion and sought by the police immediately following the crime. Two police officers testified to having visited the premises where the defendant resided, but failed in finding him.

The defendant testified that he lived with his parents in the neighborhood for at least two years after June 23, 1923, and although he lived thereafter on Long Island, where he was engaged in business, he claimed to have continued frequently to visit the neighborhood until the time of his arrest. In this he was supported by the testimony of several witnesses.

Whether the defendant disappeared at least temporarily after the date in question, we think presented a question of fact. He had long been known under various names, and there was testimony from one of his own witnesses that while engaged in business on Long Island he was known under the name of " Lano." Under the peculiar circumstances of the case the jury might well have found that the defendant, even though guilty, would feel secure in returning to his accustomed haunts.

The defendant's arrest was finally effected after two women who were claimed to have been eye-witnesses to the shooting were located. Their names were disclosed to the district attorney by a convict named Marro, who was brought from Sing Sing for examination. When questioned the women admitted having been present when the shots were fired. They explained their failure to give earlier information to the police as being based upon a desire not to get mixed up in the affair. This was a natural motive in view of the surrounding circumstances.

The women were known as Helen Gallo and Margie Davenport. The former was the mistress of one Archie Gallo and the latter the mistress of Marro. All four had been accustomed to live in the same premises. Marro and Gallo had criminal records and the women were dissolute characters.

Upon the night in question Marro and the two women left their place of abode together. They met the deceased, a night watchman of premises near Mulberry and Grand streets, and the four went to a basement restaurant at 133 Mott street. While there seated at a table, one of the women testified, the defendant walked in, said " hello," and immediately passed out. Each of the women testified that they had not been drinking either in the restaurant or before going there. Marro, on the other hand, who was one of the chief witnesses for the defense, testified that before going

to the restaurant the girls were intoxicated from drinking gin, and that four bottles of wine were consumed while in the restaurant; and, further, that he and the deceased had to assist the women upstairs to the sidewalk on leaving the restaurant. Other witnesses for the defendant likewise gave testimony tending to support the claim that the two women had been drinking and were intoxicated.

The women testified that on reaching the sidewalk in front of 133, which is located on the westerly side of Mott street, all four turned to go north towards Grand street. The Gallo woman immediately heard three shots, turned and saw the defendant with a pistol pointed " towards us." The Davenport woman, who was slightly deaf, heard one shot, turned and saw the defendant putting a pistol in his right-hand hip pocket. At the same time she saw the deceased grasp his side and run in a northerly direction. Marro was heard by the Gallo woman to say to the defendant, " You dirty rat."

While the defendant denied having been in the basement restaurant, he was concededly on the scene. He testified that he was standing in front of a ground floor restaurant at No. 133, owned by one DeAngelo, when the women, Marro and the deceased appeared; that he said " hello " to Marro, and as the group of four was proceeding north towards Grand street, he heard a shot, whereupon he and DeAngelo, who was standing with him, went into the latter's restaurant and closed the door. He then heard another shot. He was corroborated in this story by DeAngelo and to some extent by the latter's brother who was at work in DeAngelo's restaurant, and also by a witness named Gerber.

Marro testified that as he and the deceased were walking together behind the two women, he heard a shot which seemed to come from a building at a point about fifteen or twenty feet north of No. 133, and that the other shots seemed to come from the same side of the street, but at a point somewhat to the north of where the first shot was heard, and that when all shots were fired, the Gallo and Davenport women were walking together a considerable distance in advance of the witness and the deceased. The deceased was heard to cry out, and then went home. Marro accompanied him, but claims to have lost him after arriving at the home of the deceased. Lamantia sustained two shot wounds which caused his death the following night.

Upon this evidence we think there was presented purely a question of fact as to whether the defendant fired the fatal shots. If believed by the jury, it was sufficient, it seems to us, to have supported a verdict much more serious in consequence to defendant.

It is his good fortune that he escaped with a verdict of manslaughter. While it is true that no motive was shown, evidence of such was not essential, if the facts were otherwise sufficient to satisfy the jury of defendant's guilt. (*People* v. *Seppi,* 221 N. Y. 62, 70.)

The trustworthiness of the testimony of the People's two witnesses was for the jury. True, they were not witnesses of high repute, yet of the character that are usual in trials of this kind, where, as has been aptly said by the Court of Appeals, " the State is not likely to discover witnesses of high character." (*People* v. *Cohen,* 223 N. Y. 406, 422.) Surely the jury would have been justified in finding that the People's two witnesses compared favorably with many of the defendant's witnesses, and more particularly with the defendant and Marro, both of whom had long criminal careers.

The appellant's counsel urges in addition that the trial was unfair and the verdict was coerced. It is urged that the numerous questions asked by the trial judge indicated his bias, and that the defendant's counsel did not have full and fair opportunity in the cross-examination of witnesses. Perhaps, as the learned district attorney conceded, the participation of the trial judge in the questioning of witnesses was more than is customary. But it is noteworthy that the excessive questioning now complained of so bitterly seems not to have elicited any protest whatever throughout the entire trial. Moreover, numerous witnesses called for the defendant testified through an interpreter, and the record discloses that it was almost impossible to secure direct answers to questions. The trial judge thus found it necessary frequently to interfere for the purpose of shortening answers and to hold the case within proper issues.

We find no merit in the claim that defendant's counsel was prohibited from fairly conducting his cross-examination. We think the trial judge allowed sufficient latitude for purposes of attack upon the credibility of the People's main witnesses, and that on the whole there was no abuse of discretion in the matter of cross-examination. The charge that the court was unfair seems to us an afterthought on the part of defendant's counsel. In his summation he specifically referred to the fairness of the assistant district attorney who prosecuted, and further said that he " had no fault to find with anybody." It is entirely proper that we consider this apparent satisfaction of defendant's counsel as thus expressed at the end of the trial, as bearing on the good faith of his claim of unfairness as now urged. (*People* v. *Seidenshner,* 210 N. Y. 341, 367; *People* v. *Wolter,* 203 id. 484, 491.)

Nor do we feel that there is any merit in the claim that the jury was coerced into bringing in a verdict of guilty. There was not

a single exception to the main charge. At its close the trial judge charged numerous additional requests, and after having done so said: " The Court: Well, Mr. Dickstein, do you want an exception to each of your requests that I have marked as repetition? Mr. Dickstein: No, your Honor, I think you covered all of it. The Court: If you want an exception you can have it. Mr. Dickstein: No, your Honor."

The jury retired for deliberation at five-fifty-five P. M. They reported that they were " hopelessly deadlocked " at ten-forty P. M. and were sent for by the trial judge. It is apparent from what occurred that the jury at that time had not been in continuous deliberation from the time they first retired, for, in the meantime, they had been taken out for dinner. The trial judge clearly indicated, as it was his duty to do, that an agreement should be reached if possible. The trial had taken five full court days.

Complaint is made because the court thereupon delivered what is referred to as a supplemental charge favorable to the People. However, it appears that only one exception was taken thereto by the defendant's counsel when he stated that he excepted " to the manner of the additional charge, in particular where the court made reference, in reciting the testimony of witnesses for the People, and particularly where the court said that Moreno [meaning Marro] corroborated the girls." There was further discussion between the defendant's counsel and the court with respect to the testimony referred to, and after exception taken to what the court had said in respect to the testimony of another witness having " corroborated the women with respect that there were no persons on the street," the court stated that if he had made any error, the jury were to be guided by their own recollection. Subsequently the jury were recalled at the request of defendant's counsel and were informed by the court that if there was any testimony that had not been correctly stated, it should be read to the jury. In this connection the court said: " I told the jury that they are bound by their own recollection of the testimony, that I merely quoted the testimony according to my notes, to illustrate the way in which you should weigh all the evidence, taken as a whole, but not to act arbitrarily. But if I have created a misapprehension in your minds, as I did in the mind of Mr. Dickstein, I want to give him a chance to correct it. That is all. You may read the testimony that you claim on that point, Mr. Dickstein."

The defendant's counsel thereupon proceeded to read a part of the testimony of the witness Marro, in so far as he deemed it to be in contradiction of the testimony of the People's two witnesses,

whereupon the jury again retired. At this point, as we read the proceedings, whatever possible error the court may have committed in quoting the testimony of witnesses, was corrected. At least, the defendant's counsel had full opportunity to read any part of the record he saw fit.

Moreover, the court said before the jury retired: " As I told you, you will be guided by your own recollection of the testimony. Now, that point is read. That is not a corroboration of the girls, but a contradiction by Moreno Marro on that point, as to where he was, as to where they all were when the shooting took place."

It appears that the jury again retired and at one-forty-five A. M. again sent in a written communication to the effect that they were still " hopelessly deadlocked and it is evident that further deliberation is positively useless." It does not appear that the court communicated further with the jury, who were locked up for the night. At eleven-fifteen A. M. the jury returned a verdict of manslaughter in the first degree.

In the circumstances we do not feel that there can be said to have been coercion of a verdict within any of the authorities cited by the appellant. We, therefore, are of opinion that the judgment should be affirmed.

DOWLING, P. J., FINCH, McAVOY and MARTIN, JJ., concur.

Judgment affirmed.