Foster, J.
This case comes to us on cross appeals from an order of the Appellate Division, Third Department, which unanimously modified a judgment of the County Court, Cortland County, convicting defendant of the crime of attempted sodomy in the second degree upon a jury verdict. The order of the Appellate Division modified the judgment on the law and the facts, reduced the conviction to an attempt to commit sodomy as a misdemeanor, and sentenced the defendant to six months in the penitentiary. The People contest the reduction of the conviction by the Appellate Division and seek reinstatement of the original judgment of conviction of the County Court. Defendant seeks dismissal of the indictment, or in the alternative that he be granted a new trial.
The defendant, at the time of his arrest and trial herein, was 59 years of age. He had divorced his wife some years earlier, and lived with his 26-year-old son on a small farm in the Town of Preble, Cortland County, New York. Prior to the conviction herein appealed from, the defendant had no criminal record of any kind.
On March 8, 1959 James Proctor, then 16 years of age, was picked up by the State Police and taken to their station in Homer, New York, for questioning in connection with the whereabouts of a boy who was wanted by the probation authorities. In the course of this questioning, Proctor signed two written statements for the police, the substance of both being that, on an occasion about a month earlier, he voluntarily had attempted to perform an act of anal intercourse with the defendant, at the request of the defendant at the defendant’s home in Preble. Proctor swore to the truth of each of those statements before different Magistrates and was confined to the county jail on an information charging him with the crime of sodomy, third degree.
The testimony was conflicting as to what occurred thereafter. According to the People’s witness, Trooper John Cody, Bandall was taken to the Homer substation for questioning by the State Police on March 12, 1959. He orally confessed to the act but refused to make a written statement. At 8:00 or 8:30 p.m. on that day, the defendant formally was arrested upon the information of Trooper Cody, charging him with sodomy in the second degree. He then was arraigned before B. Curtis Harris. Justice of the Peace, who advised him of all of his rights, includ *417 ing his right to counsel, and was committed to the Cortland County Jail for examination. On March 13, 1959 Trooper Cody received word that the defendant desired to make a written statement. Trooper Cody and Corporal Bichard Haley of the State Police went to the Sheriff’s office and prepared the typewritten statement based upon defendant’s oral admissions. The defendant read the statement, made a correction, and signed it before a notary public who verified the signature.
On the other hand, defendant Bandall testified that he was picked up by the State Police on March 12, without being advised of the reason; that during the questioning, a trooper struck defendant with his elbow, causing blood to flow from his ear; that a trooper used defendant’s arm as a weapon and caused defendant to strike himself in the head; and that the troopers otherwise abused and intimidated him. He further testified that the confession he signed on March 13 was never read to him; that he could not read it because his glasses had been destroyed accidentally prior to his arrest; and that he did not know the contents of the document. The troopers denied striking the defendant, and averred that the confession was made freely and readily by defendant and that it was read by defendant prior to signing.
Justice of the Peace Habéis was called as a defense witness. He recalled that on March 14,1959, between 10:00 and 10:30 a.m., defendant again was brought before him. A document was produced and, at the request of the troopers, Justice Harris asked the defendant if he desired to swear to the truth thereof. Defendant then swore to the truth of the contents of the document without first having been advised of his privilege against self incrimination. Justice Harbis thereupon advised defendant of his right to counsel, and to a preliminary examination, but the defendant waived examination and was held for Grand Jury action. The Justice could not recall whether he verified the document. He testified that he had noticed that the document was notarized, but he himself did not see the body of the document nor the contents thereof. Apparently Trooper Cody then put the document in his pocket and carried it away. Defendant’s testimony corroborated that of Justice Harbis. Trooper Cody, however, did not recall having produced any document before Justice Harris, despite contrary allegations in an affidavit sub *418 mitted by Cody in opposition to defendant’s motion to inspect the Grand Jury minutes.
Defendant was indicted by the Cortland County Grand Jury for the crime of sodomy in the second degree. The indictment charged as follows: “ The said defendant, on or about the 4th day of February, 1959, * * * then being over the age of twenty-one years, to wit: fifty-nine (59) years of age, engaged in an act of carnal knowledge by the anus with one James Deyo Proctor, a person under the age of eighteen (18) years, to wit: sixteen (16) years of age and aided and abetted said James Deyo Proctor in an act of carnal knowledge by the anus with the defendant; against the form of the statute in such case made and provided.” Motions to inspect the Grand Jury minutes and to dismiss the indictment upon grounds that defendant’s constitutional rights were violated and that the indictment was based upon illegal and insufficient evidence were denied. As we have indicated, the jury returned a verdict of guilty of an attempt to commit sodomy in the second degree, and the Appellate Division modified. From the written statements and testimony of Proctor and the oral and written confessions of defendant Randall, and from the evidence adduced, the jury could find that the defendant, 59 years of age, submitted to an act of anal intercourse perpetrated by a 16-year-old boy.
The primary question before us, and the one dealt with in the opinion below, is whether or not defendant was guilty of any crime under the sodomy statute (Penal Law, § 690), as it now exists, and as it existed at the time the act charged allegedly was committed.
Section 690 of the Penal Law, prior to 1950, provided, in part, that one who “ carnally knows any male or female person by the anus or by or with the mouth; or voluntarily submits to such carnal Imowledge * * * is guilty of sodomy ”. (Emphasis supplied.) Indeed, from 1886 (L. 1886, ch. 31, § 6) to 1950, the Legislature had indicated that only the perpetrator of the sodomous act had carnal Imowledge within the meaning of the sodomy statute. The pathic or recipient of the act was described separately as one who “voluntarily submits to such carnal knowledge ”. The meaning of the term “ one who carnally lmows another ”, therefore, has been restricted by constant and long-settled legislative usage, and includes only the active participant or perpetrator of the sodomy.
*419 The statute was amended in 1950 (L. 1950, eh. 525, § 15) and the crime of sodomy was subdivided into degrees. No reference was made in the new statute to a person who ‘ ‘ voluntarily submits to such carnal knowledge.” The statute sets forth five paragraphs defining sodomy in the first degree. In general “A person who carnally knows” another “by the anus or by or with the mouth ” against the will and consent of the other or under circumstances where lack of consent may be implied is guilty of that crime (italics supplied). Sodomy in the second degree, also a felony, then is defined as follows: “ A person twenty-one years of age or over who carnally knows by the anus or by or with the mouth any male or female person under the age of eighteen years, under circumstances not amounting to sodomy in the first degree is guilty of sodomy in the second degree” (italics supplied). Sodomy as a misdemeanor results when a person ‘ ‘ carnally knows ’ ’ another ‘ ‘ by the anus or by or with the mouth under circumstances not amounting to sodomy in the first degree or sodomy in the second degree ”.
Prior to amendment, then, the passive party to the act of sodomy was guilty of the crime to the same extent as the perpetrator, and this was expressly set forth in the statute. Abruptly, the sodomy statute was revised in 1950 and thereafter only a person who carnally knows another is specified.
In the case before us, both parties voluntarily attempted to consummate a sodomous act. There was no attempted sodomy in the first degree. Nor did defendant Randall, a person over the age of 21, attempt to carnally know Proctor, an infant undor the age of 16. Randall thus committed no attempted sodomy in the second degree. Here, the infant attempted to carnally know the adult within the meaning of the statute. The infant was not guilty of sodomy in the second degree, since only an adult who “carnally knows ” an infant may be guilty of that crime. Randall, therefore, was not guilty of attempted sodomy in the second degree as an aider and abettor, for there was no attempted sodomy in the second degree committed.
It is argued by the People that the purpose of the provision for sodomy in the second degree is to protect infants from sodomous acts at the insistence of adults, and to insulate youths from criminal responsibility for their participation in such acts. *420 Therefore, they conclude that the failure to include as violators of the provision adults who ‘‘ voluntarily submit ’ ’ to unnatural acts by infants was merely a legislative oversight. They would have us define “ carnal knowledge ” as “ sexual intercourse ” (Black’s Law Dictionary [4th ed.], p. 268; Webster’s New International Dictionary [2d ed.], p. 408), and conclude that the adult defendant ‘ ‘ carnally knew ’ ’ the infant Proctor. In this fashion, it is urged, the legislative oversight would be corrected, and we could then reinstate the judgment of guilty of attempted sodomy in the second degree.
Undoubtedly an adult who habitually solicits others to commit sodomous acts upon his person may threaten the welfare of an infant to the same degree as an adult perpetrator, and the People’s argument is persuasive. But, as we have pointed out, the Legislature has provided that sodomy in the second degree may be committed only by a person over 21 years of age, who carnally knows an infant, and we are constrained to define the term, “ carnal knowledge ”, in accordance with legislative usage. In the words of the opinion below, “ Were it not for the historical handicap of the restricted meaning * * * the words ‘ carnally knows ’ * * * might be given a broader interpretation to include the acts of the pathic.” Accordingly, we agree with the Appellate Division that the defendant attempted no sodomy as a felony in the first or second degrees.
Sodomy as a misdemeanor remains to be considered. A person who carnally knows another in an unnatural fashion, under circumstances not amounting to sodomy as a felony is guilty of a misdemeanor. Proctor, therefore, committed attempted sodomy as a misdemeanor, but the defendant was by no means an innocent party. The trial court in his charge stated:
“ The People claim, however, that the defendant aided and abetted Proctor in the commission and the consummation of the alleged act of carnal knowledge, and that because he did so, he may be convicted as a principal in the crime charged, under the provisions of the Penal Law which provides as follows: ‘ A person concerned in the commission of a crime, whether he directly commits the act constituting the offense, or aids and abets in the commission, or a person who directly or indirectly counsels, commands, induces or procures another to commit a crime, is a principal. ’
*421 ‘ ‘ In other words, one aiding or abetting in the accomplishment of the crime of Sodomy upon himself is made guilty as a principal with the actual perpetrator, the two being guilty of the same offense. ’ ’
It seems to us that defendant was a voluntary participant in the misdemeanor and, therefore, an aider, abettor, and principal (Penal Law, §§ 2, 27, 1936) unless we are prepared to say that he was a victim of the crime rather than a party thereto. It is true that we have held a woman upon whose body the crime of abortion is committed is a victim rather than a principal, despite her voluntary participation (People v. Blank, 283 N. Y. 526; People v. Vedder, 98 N. Y. 630, 632), and a purchaser of intoxicating beverages illegally sold is not a principal under statutes forbidding the sale (People v. Smith, 28 Hun 626, affd. 92 N. Y. 665; 1 Wharton’s Criminal Law and Evidence [Anderson ed.], § 105). Those eases are not apposite here.
Directly applicable, we believe, are eases in which persons in positions analogous to that of this defendant have been treated as principals together with the persons directly violating the express prohibitions of the Penal Law. Thus, we have held that a thief who delivers stolen goods to. a receiver is a participant in the receiver’s crime of receiving stolen goods (People v. Kupperschmidt, 237 N. Y. 463, 465); that the payer of a bribe is an accomplice of the taker, and may be held as a principal under a statute forbidding the taking of a bribe and, conversely, the taker is an accomplice under statutes forbidding bribery (People v. Mullens, 292 N. Y. 408; People v. Hyde, 156 App. Div. 618, 624-628; People v. Maynard, 151 App. Div. 790); and that a perjurer is an accomplice and principal in the crime of subornation of perjury (People v. Gilhooley, 108 App. Div. 234, affd. 187 N. Y. 551; People v. Gondelman, 253 App. Div. 924; People v. Hyde, supra, p. 628).
While the Legislature has omitted the acts of the pathic in its definition of sodomy, established principles of criminal law compel us to hold the voluntary pathic criminally responsible as a principal and accomplice for his voluntary participation in the misdemeanor (see, e.g., People v. Standish, 5 A D 2d 726; People v. Knorr, 281 App. Div. 772; People v. Crocker, 272 App. Div. 1087; People v. Petrucci, 271 App. Div. 936). Certainly this defendant was not a victim of Proctor’s acts in any sense of the *422 word, or under any policy consideration, and a determination that he was not an aider and abettor would completely remove even an aggressive, instigating pathic from the ambit of the sodomy laws. While a pathic may not be guilty of a felony, we do not think that the Legislature intended to protect and acquit the voluntary pathic from all criminal responsibility, even as an aider and abettor to a misdemeanor.
Defendant next contends that the jury verdict of guilty of an attempt to commit sodomy in any degree was improper, since all of the People’s evidence including the confessions was designed to prove an actual “ penetration ” (Penal Law, § 691). He argues that the jury either should have returned a verdict of guilty of a consummated sodomy or acquitted. The confessions of Proctor, however, by no means assert that penetration actually was effected. Furthermore, at one point during the trial, Proctor testified that he had told defense counsel on a prior occasion that no penetration actually was effected. The issue of penetration was charged to the jury properly, and no exception was taken to the court’s charge on the possibility of a jury verdict of guilty of an attempt to commit sodomy. The jury, of course, was justified in entertaining a reasonable doubt as to penetration.
It is argued that the indictment charged the crime of sodomy in the second degree; that the trial court refused to charge the jury that it could return a verdict of guilty of sodomy as a misdemeanor (or an attempt to commit the misdemeanor); and that, therefore, the Appellate Division was powerless to reduce the verdict to attempted sodomy as a misdemeanor, and should have dismissed the indictment or granted a new trial. However, the Appellate Division acted pursuant to statutory authority (Code Crim. Pro., § 543, subds. 1, 2) and properly modified the judgment of conviction to conform to the proof (cf. People v. Rytel, 284 N. Y. 242). The reduction of the conviction was warranted.
The indictment set forth the facts constituting the crime charged,' although the accusatory portion set forth a higher degree of the crime than was warranted by those facts. This did not render the indictment defective since the factual allegations were controlling (People v. Miller, 143 App. Div. 251, affd. 202 N. Y. 618; People v. Gaydica, 122 Misc. 31; People v. Dwyer, *423 160 App. Div. 542, 546, affd. 215 N. Y. 46; People v. Samuels, 259 App. Div. 167, 170, affd. 284 N. Y. 410). By returning a verdict of guilty of attempted sodomy in the second degree, the jury necessarily found all of the elements comprising attempted sodomy as a misdemeanor and the Appellate Division acted properly in reducing the conviction to a misdemeanor (Code Crim. Pro., §§ 543, 444, 445). No harm was done by the trial court’s failure to charge the jury that they could find defendant guilty of a misdemeanor.
On the issue as to whether the confession was coerced by the State Troopers by use of brutality, the trial court charged: ‘ ‘ Before you have the right to consider the confession or confessions for any purpose, you must first find beyond a reasonable doubt that the confession was a voluntary one ’ ’. The matter was for the jury on this record, and ‘ ‘ Their * * * determination cannot be disturbed ‘ without breaking down the barriers that separate the functions of a jury from those of an appellate court ’ ” (People v. Vargas, 7 N Y 2d 555, 563). The jury apparently believed, as they were entitled to, the testimony of the State Troopers.
Defendant urges, however, that when he swore to the truth of his notarized confession before the arraigning Magistrate, his constitutional and statutory privilege against self incrimination was violated; that the use of the confession by the G-rand Jury to support an indictment was illegal and irregular; that without the confession, there was not sufficient evidence before the Grand Jury to support the indictment; and that, therefore, the indictment should have been dismissed below and must be dismissed now. He also urges that the use of the confession sworn to before the Magistrate, whether actually signed by the Magistrate or not, could not be used legally in any fashion, under the principle of People v. Foley (8 N Y 2d 153, 155); People v. Shenandoah (9 N Y 2d 75); People v. Oakley (9 N Y 2d 656), and People v. Warner (9 N Y 2d 670).
At the outset, it must be remembered that Trooper Cody, at the trial, did not recall the incident and the trial court ruled that a question of fact existed as to whether defendant actually was asked to swear to a confession before a Magistrate. In his charge, however, the trial court failed specifically to explain to the jury the consequences of the incident if they were to deter *424 mine that the incident in fact did occur. For purposes of this opinion, therefore, we will assume that the jury found that the incident did occur for we have no way of ascertaining the finding on that issue. And, in their papers in opposition to a pretrial motion of defendant, the People clearly admitted the occurrence.
While in the cases above cited, we indicated our disapproval of ‘ ‘ the taking of or the swearing to confessions, by any judicial officer”, and that principle very possibly was violated in this case, it does not necessarily follow that this conviction must be reversed on that ground. Here, the confession was voluntarily made and notarized prior to the swearing before the Magistrate. The Magistrate did not verify the confession in writing.
Admittedly the confession was used before the Grand Jury. But there is nothing which indicates to us that the swearing of the confession before a Magistrate was made known to that body. A pretrial motion by defendant to inspect the Grand Jury minutes upon the grounds that illegal evidence was presented to the Grand Jury was denied, and that ruling is not reviewable here; this being so, the Grand Jury minutes are not properly before us at this time (People v. Powell, 3 N Y 2d 672). A motion to dismiss the indictment also was made, and the denial of that motion is reviewable here, on appeal from the judgment of conviction (People v. Howell, supra; People v. Nitzberg, 289 N. Y. 523). What we are asked to do now, in reviewing the denial of the motion to dismiss, and in the absence of the Grand Jury minutes, is to assume that the Grand Jury was told or advised in some fashion that the confession was sworn to before a Magistrate. This we are not prepared to do in the face of denials by the People that the fact of the swearing before the Magistrate was made known to the Grand Jury, and in the face of the physical appearance of the confession itself, containing as it does, no signature of the Magistrate. The presumption of regularity of proceedings before the Grand Jury and of the ■ indictment may appropriately be applied (People v. Howell, supra, p. 675; People v. Glen, 173 N. Y. 395; People v. Sweeney, 213 N. Y. 37). There is no “ clear showing” of insufficiency or illegality of evidence before the Grand Jury. The confession, in the absence of facts indicating to the Grand Jury that it improperly was obtained or sworn to, was admissible to support *425 the indictment (People v. Caminito, 3 N Y 2d 596). This is particularly so where, as here, it was validly and voluntarily sworn to in the first instance.
On the trial, the People at no time exploited the fact that the confession had been sworn to before the Magistrate. Bather, the defendant and his witness brought it out, and emphasized it. Under these circumstances, we do not think that the Foley case (supra), and the cases decided thereunder, necessitate a reversal. An oral confession voluntarily was made and subsequently a written confession voluntarily was executed and sworn to before a notary. Only thereafter did the Magistrate become involved in the confession, and the People did not attempt to take advantage of his participation. The defendant, by his own acts, and by the acts of his counsel, made the incident known to the jury. Here there was no prejudice to defendant by any act of the People (cf. People v. Ferola, 215 N. Y. 285, 291; People v. Downs, 8 N Y 2d 860). We do not mean to condone the act of the troopers and the Magistrate, but on this record, we fail to see how'defendant was harmed except by his own acts. Nor does the doctrine set forth in People v. Di Biasi (7 N Y 2d 544) apply. The defendant in the instant case orally confessed his crime prior to arrest, and confessed in writing at his own request after arrest and after an information was filed, but prior to indictment.
Other issues are raised. The jury, after considerable deliberation, could not agree upon a verdict. They were called back to the courtroom, and the court in an impartial manner, requested that they try for another half hour to reach a verdict. Shortly thereafter, the verdict of guilty was returned. Defendant attacks the procedure employed by the trial court, and argues that the court coerced the guilty verdict. We have held that ‘ ‘ The importance of having a jury agree may properly be urged upon their attention”, and “ They may properly be warned against stubbornness and self-assertion ” (People v. Faber, 199 N. Y. 256, 260-261). That language precisely describes what was done here by the trial court and the procedure employed was in no sense a “ coercion ” and has been approved by the courts of this State (People v. Campanaro, 223 App. Div. 248, 253, affd. 249 N. Y. 545; Hill v. Edinger, 281 App. Div. 1052).
In Hill v. Edinger (supra) the jury had been out for some six hours, in a civil case, and could reach no agreement. The *426 court thereupon suggested that they take an additional 15 or 20 minutes to see if they could reach a verdict, and if they could not, he would discharge them. Shortly thereafter, a verdict for plaintiff was returned. On appeal, the defendant argued that the court coerced the jury by placing a time limit on their deliberations. The appellate court rejected the argument, and stated (281 App. Div., p. 1053): “ This did not constitute coercion and left the jury free to agree or disagree. We cannot say that these matters prejudiced defendant.” Here, also, the jury was free to convict, acquit, or disagree. All that was requested was one final effort to reach a verdict, and to overcome personal traits of stubbornness or self-assertion. No harm was done and no error was committed.
In his summation the District Attorney made an improper statement to the effect that the defendant may have been guilty .of similar offenses on other occasions. Under the circumstances of this case we are constrained to the belief that the incident does not present reversible error (People v. Broady, 5 N Y 2d 500, 516).
The judgment should be affirmed.
Chief Judge Desmond and Judges Dye, Fuld, Froessel, Van Voorhis and Burke concur.
Judgment affirmed.