OPINION OF THE COURT
Ernest Bianchi, J.
The defendant was tried before me without a jury on February 21, 1985 on a one-count indictment, charging him with having committed bail jumping in the second degree, in the following manner:
The defendant, on or about July 10, 1983, in the County of Queens, having been released by court order from custody and allowed to remain at liberty upon condition that he will subsequently appear personally in connection with a charge against him of committing the felony of criminal possession of stolen property in the second degree, failed to appear personally on the required date of June 8, 1983 in Part AP3, Queens Criminal Court, and voluntarily 30 days thereafter.
Decision was reserved on three defense motions to dismiss: (a) on the People’s opening statement, (b) at the end of the People’s case, and (c) at the end of the entire case. The court also reserved decision on the defense request for a verdict of not guilty.
*290 The entire thrust of defendant’s defense at trial and in a memorandum of law submitted April 4, 1985, is a legal attack upon the indictment as being defective because of a discrepancy between the degree of crime charged in the accusatory part of the indictment, as opposed to the factual portion of the indictment, which supports a higher degree of bail jumping. This defense was raised for the first time at trial. The defendant did not contest the factual sufficiency of the allegations in the indictment. Nor did defendant contest the proof offered against him by the People which was admitted without his objection and without cross-examination. The defendant called no witnesses, did not testify and did not offer any documentary proof in his behalf. The proof adduced at trial consisted of testimony by Senior Court Clerk William Kalish, and admission into evidence of the Criminal Court docket papers concerning the underlying charges in connection with which defendant failed to appear and also certified stenographic minutes of the proceedings of May 19, 1983, at which defendant himself participated in the selection of the date for the next court appearance, June 8, 1983, which he did not make.
In addition to the above motions made by defendant’s assigned defense counsel, defendant submitted his own supplementary motion papers, dated March 28, 1985, seeking dismissal of the indictment.
The legal issue presented by these motions is what effect should be given to an indictment which mistakenly labeled the crime charged against the defendant as bail jumping in the second degree instead of bail jumping in the first degree, even though the facts alleged in the indictment, and the evidence offered and admitted at trial, were sufficient to warrant, respectively, a charge of and conviction for the crime of bail jumping in the first degree.
At trial, the defendant’s position was that defendant could not be tried under this indictment nor could the indictment be amended. His contention was that he could not be found guilty of a felony because he was accused of committing a misdemeanor; nor could he be convicted of a misdemeanor because the proof offered against him concerned commission of a felony. This catch-22 position was modified in defense counsel’s memorandum of law in which he requested a verdict of guilty of bail jumping in the second degree, a class A misdemeanor under the law in effect at the time the crime was allegedly committed. Defendant continued his contention that *291 the indictment could not be amended, even if the People had sought to amend the indictment.
The People’s position at trial was that the indictment was not so defective as to preclude trial. The People suggested either amending the indictment or reducing the charge to a misdemeanor level.
At the time the crime charged in the indictment was allegedly committed, the bail jumping statute was in flux. The law had been amended, but the amendment had not yet taken effect. In order to clarify the impact, if any, of the change in the law and also to explore the legal issue presented, the court granted both sides a month’s adjournment to research the law and to present memoranda. Defendant’s belated memorandum cites no authority other than CPL 200.50 (4), (7) and 200.70 (1), (2) concerning what an indictment must contain and when an indictment may be amended. The People did not present a memorandum until the day set for decision and verdict, more than a month and a half after trial.
The court has researched the issue presented and for the reasons set forth hereinafter denies each of defendant’s motions, grants amendment of the indictment as to the degree of the crime charged, and finds the defendant guilty of the crime of bail jumping in the first degree.
The bail jumping statutes were amended on June 10, 1983, to be effective on the 90th day thereafter. The law, as it stood prior to the amendment, contained two sections — Penal Law § 215.56, bail jumping in the second degree, and Penal Law § 215.57, bail jumping in the first degree. The second degree offense was concerned with a defendant’s failure to appear "in connection with a criminal action or proceeding” and was classified as a class A misdemeanor offense. The first degree offense was concerned with a defendant’s failure to appear "in connection with a charge against him of committing a felony” and was classified as a class E felony.
The June 10, 1983 amendments effected a shift downward in the degree designation of these crimes to make room for a new offense of bail jumping in the first degree — Penal Law § 215.57, which was concerned with the failure of a defendant to appear "in connection with an indictment pending against him, which charges him with the commission of a class A or class B felony” and which was itself classified as a class D felony.
The effect of these amendments was to reclassify bail jump *292 ing in the second degree as a third degree offense — Penal Law § 215.55, and bail jumping in the first degree as a second degree offense — Penal Law § 215.56. The exact language of each section as it was preamendment was maintained, as was the grade classification of each offense.
Under the instant indictment, defendant was charged with bail jumping in the second degree, the charge applicable under the old law to nonappearance on an underlying criminal action or proceeding. However, the factual allegations of the indictment made out a charge, in effect, of bail jumping in the first degree under the old law because the defendant was alleged to have failed to appear in connection with a pending felony charge.
Had the new law been in effect at the time the defendant failed to appear, the present indictment would have been proper in form and content. Had the present indictment charged defendant in the accusatory portion of the indictment with bail jumping in the first degree, under the old law, the indictment would have been proper in form and content.
Although the amended law is not applicable in this case, it is relevant in highlighting the fact that the gravamen of the offense of bail jumping is the failure of the defendant to appear when required. The different degrees and grade classifications of the various bail jumping sections are determined by the nature of the underlying charges as to which the defendant fails to appear. This fact is important in considering whether the indictment, notwithstanding the misnomer of the degree of the offense, was a viable indictment properly subject to amendment.
CPL 200.50 provides, in pertinent part:
"An indictment must contain: * * *
"4. A statement in each count that the grand jury '* * * accuses the defendant * * * of a designated offense; and * * *
"7. A plain and concise factual statement in each count which, without allegations of an evidentiary nature, (a) asserts facts supporting every element of the offense charged and the defendant’s * * * commission thereof with sufficient precision to clearly apprise the defendant * * * of the conduct which is the subject of the accusation”.
CPL 200.70 provides, in pertinent part:
"Indictment; amendment of.
"1. At any time before or during trial, the court may, upon *293 application of the people and with notice to the defendant and opportunity to be heard, order the amendment of an indictment with respect to defects, errors or variances from the proof relating to matters of form, time, place, names of persons and the like, when such an amendment does not change the theory or theories of the prosecution as reflected in the evidence before the grand jury which filed such indictment, or otherwise tend to prejudice the defendant on the merits * * * Upon permitting such an amendment, the court must, upon application of the defendant, order any adjournment of the proceedings which may, by reason of such amendment, be necessary to accord the defendant adequate opportunity to prepare his defense.
"2. An indictment may not be amended in any respect which changes the theory or theories of the prosecution as reflected in the evidence before the grand jury which filed it; nor may an indictment * * * be amended for the purpose of curing:
"(a) A failure thereof to charge or state an offense”.
In the instant offense, the only defect is the misnomer of the degree of the crime charged. Changing the degree of the offense charged, in this case, does not alter the theory of the prosecution or the facts alleged. Consequently, the defendant has no basis to allege that amendment of the indictment would prejudice him.
The aforementioned CPL provisions serve to provide certain protections to a defendant. Included in these protections are: (1) providing the defendant with fair notice of the accusations made against him so that he will be able to prepare a defense, i.e., informing him of all the legally material elements of the crime of which defendant is accused and stating that defendant in fact committed the acts which comprise those elements; (2) providing some means for ensuring that the crime for which the defendant is brought to trial is in fact one for which he was indicted by the Grand Jury, rather than some alternative seized upon by the prosecution in light of subsequently discovered evidence; and (3) providing the proper means of indicating just what crime or crimes defendant has been tried for, in order to avoid subsequent attempts to retry him for the same crime or crimes, thereby protecting the defendant against double jeopardy (People v Iannone, 45 NY2d 589).
The factual allegations of an indictment are controlling and *294 an indictment is not rendered defective merely because it sets forth a higher degree of crime than is warranted by the allegations (People v Randall, 9 NY2d 413; People v Hutchins, 43 AD2d 412). Although the situation here is reversed in that the degree of the crime charged is lower than is warranted by the allegations, the same principle is applicable in this case. This principle was followed 100 years ago in People v Sullivan (38 Hun 636) where the indictment alleged facts which constituted assault in the first degree but the offense named was assault in the second degree. The Court of General Sessions, Fifth Department, held that the indictment was sufficient for first degree assault, the name of the crime being merely a matter of form which may or may not be stated, and if stated incorrectly, it does not vitiate or control the character of the crime as against the allegations constituting it.
Having reviewed the Grand Jury minutes, the court finds that in the case at bar, defendant’s rights have been protected. To allow the indictment to be amended as to the defect of form concerning the degree of the offense charged has, in no way, prejudiced the defendant.
Having permitted and granted amendment of the indictment, the court finds that the evidence adduced at trial was sufficient, beyond a reasonable doubt, to support the court’s verdict of defendant’s guilt of bail jumping in the first degree.