■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RUSSELL BORTHWICK, Appellant. [857 NYS2d 358]—

Kavanagh, J. Appeal from a judgment of the County Court of Schoharie County (Bartlett III, J.), rendered October 19, 2005, upon a verdict convicting defendant of the crimes of rape in the first degree (four counts) and incest (two counts).

Defendant was charged by indictment with numerous counts of rape in the first degree, sexual abuse in the first degree, incest and endangering the welfare of a child, all of which involved allegations that on two separate occasions in 1992, he sexually assaulted an eight-year-old girl.[1] After a jury trial, defendant was convicted of four counts of rape in the first degree and two counts of incest and was sentenced to an aggregate prison term of $16^2/_3$ to 50 years. Defendant now appeals from the judgment of conviction.

Defendant raises a number of issues in this appeal, including that his conviction was not supported by the weight of the evidence, he did not receive the effective assistance of counsel and that County Court, by its conduct, forced the jury to abruptly terminate its deliberations and render its verdict. For the reasons that follow, we disagree with each of these contentions and affirm defendant's conviction.

As for defendant's claim that his convictions were against the weight of the evidence, the record establishes that three witnesses testified at trial—the victim and two state troopers who interviewed defendant about the victim's complaint. The victim

---

1. Initially, defendant was charged in a 101-count indictment stemming from allegations that defendant had continuously raped the victim for many years. A superceding indictment was filed, charging defendant with, among other things, 28 counts of rape in the first degree. Defendant pleaded guilty to 12 counts of sexual abuse in the first degree for a negotiated prison sentence of six months and postrelease supervision. However, County Court refused to honor the plea agreement when the victim objected to the proposed sentence and defendant refused to acknowledge his guilt in the presentence investigation report. As a result, defendant was allowed to withdraw his plea and the matter proceeded to trial.

testified that in the summer of 1992, when she was eight years old, she was playing in the backyard and was called into the house by defendant. The victim alleged that, once inside, defendant grabbed her by the hair and arm and forced her onto his bed. She attempted to resist but he held her face down on the bed, removed her shorts and underwear and had sexual intercourse with her. The victim testified that she was in "so much pain" and that afterwards there was blood on her legs. She recalled that defendant then took her to the bathroom and put her under the shower to remove the blood from her legs. She also testified that when she complained of the pain and told defendant that she did not feel well, he told her to stop crying and threatened her. Specifically, she recalled defendant telling her that he would hurt or kill her or her mother if she ever told anyone about what had happened.

The victim also testified that later that same summer, she was outside playing with friends when defendant once again called her into the house. As she entered his room, defendant forced her onto his bed and, when she tried to resist, he slapped her. He then unclothed her and had sexual intercourse with her. Once again, defendant threatened the victim and warned her not to disclose to anyone what had occurred. The victim acknowledged that 10 years later, in 2003, she, for the first time, disclosed the allegations of defendant's assaults in conversations she had with her high school teachers and a guidance counselor. These officials, in turn, notified the State Police, who immediately commenced an investigation.

After a series of interviews with the victim, the investigators attempted to arrange a meeting with defendant. After defendant failed to respond to numerous messages asking him to contact the State Police, the investigators went to his place of work, introduced themselves, told defendant that they needed to talk to him about a complaint that had been made and asked him to accompany them to State Police headquarters. He agreed to go and, upon his arrival, was given *Miranda* warnings and asked to sign a form indicating that he was aware of and was prepared to waive his constitutional rights. After defendant signed the form and agreed to participate in the interview, he was told, for the first time, who the victim was and that she had made a complaint against him. In response, defendant is alleged to have stated that "if this is about sex, I am going to deny it right now." Both investigators testified that at that point of the interview they had simply identified the victim and indicated to defendant that she had made a complaint against him; nothing had been stated to defendant that the complaint had sexual

overtones or was of a sexual nature. "Viewing the evidence in a neutral light and weighing the probative force of the conflicting testimony and the relative strength of any conflicting inferences which may be drawn, as well as giving due deference to the jury's credibility assessments" (*People v Pomales*, 49 AD3d 962, 963 [2008] [citations omitted]; *see People v Jackson*, 48 AD3d 891, 892 [2008]), we disagree with defendant's claim that the verdict convicting him of rape in the first degree and incest was against the weight of the evidence (*see People v Bleakley*, 69 NY2d 490, 495 [1987]; *see also People v Romero*, 7 NY3d 633, 643 [2006]).

Defendant contends that the victim's testimony is so inherently incredible as to be totally unworthy of belief. In support of this contention, he points to the 10-year delay between the alleged sexual assaults and the victim's initial disclosure of the assaults to officials at her high school. Defendant also recounts inconsistencies in the victim's recollection of the underlying facts, yet these inconsistencies were fully developed at trial. The jury was well aware of these arguments and, by its verdict, chose to reject them (*see People v Bruno*, 47 AD3d 1064, 1066 [2008], *lv denied* 10 NY3d 809 [2008]). The victim's reluctance, given the context within which these sexual assaults were alleged to have occurred, could well account for her delay in reporting them. The inconsistencies that exist in her recollection of the events in question are certainly understandable given the victim's age at the time of the incidents and the 13-year gap between when the assaults are alleged to have occurred and when the victim was called to testify about them at trial. Moreover, the inconsistencies in question focus on the victim's recollection as to the identity of the children who were playing in the backyard when the first incident occurred and her recollection that one of the attacks took place in "early summer" as opposed to June or July. Such inconsistencies, given the attendant circumstances, do not measure up to the type of disclosures which would render a witness's testimony incredible as a matter of law or establish a basis "upon which to disturb [the jury's] resolution of these credibility issues" (*People v Campbell*, 17 AD3d 925, 926 [2005], *lv denied* 5 NY3d 760 [2005]; *see People v Perkins*, 27 AD3d 890, 892 [2006], *lvs denied* 6 NY3d 897 [2006], 7 NY3d 761 [2006]). More importantly, the evidence submitted at trial—the victim's testimony and the statement attributed to defendant by the State Police—establish a credible basis for the jury's guilty verdict. In addition, nothing has been submitted by way of credible evidence that would ascribe to the victim a motive to fabricate these allegations against this defendant, and his statement to the police constitutes compelling corroboration

for the victim's claim that defendant had, in fact, sexually assaulted her. Accordingly, it cannot be said that the convictions are not supported by the weight of the credible evidence offered at trial (*see People v Colvin*, 37 AD3d 856, 857 [2007], *lv denied* 8 NY3d 944 [2007]).

Defendant's complaints regarding counsel's representation have been reviewed and simply fail to establish that defendant was denied meaningful assistance of trial counsel (*see People v Baldi*, 54 NY2d 137, 147 [1981]; *People v Rodabaugh*, 26 AD3d 598, 600 [2006]). Specifically, he claims that his trial counsel failed to file a motion to preclude the statement that he is alleged to have made to the State Police at the time of their initial interview and that counsel's failure to do so rendered his assistance ineffective. We disagree. Defense counsel, at the outset of these proceedings, filed an omnibus motion that included a motion to suppress any statements sought to be introduced into evidence by the prosecution which was claimed to have been made by defendant to law enforcement authorities. Upon learning, albeit belatedly, that the prosecution intended to use defendant's statement to the State Police at trial, counsel moved to withdraw the motion to suppress or, alternatively, convert it to a motion to preclude based upon the prosecution's failure to comply with the notice provisions contained in CPL 710.30. County Court refused to allow counsel to withdraw the motion and, instead, proceeded with the *Huntley* hearing.[2] Initially, counsel indicated that he would not participate in the *Huntley* hearing because to do so would compromise his position in a motion to suppress (*see People v Kirkland*, 89 NY2d 903, 904 [1996]; *People v Barton*, 301 AD2d 747, 748 [2003], *lvs denied* 99 NY2d 625 [2003], 1 NY3d 539 [2003]). However, counsel ultimately decided to participate in the hearing because of the obvious impact the statement would have on defendant's position at trial.

Moreover, defense counsel was well aware, at the time that he sought to suppress this statement, that the general purpose of CPL 710.30 "is to inform a defendant that the People intend to offer evidence of a statement to a public officer at trial so that a timely motion to suppress the evidence may be made" (*People v Rodney*, 85 NY2d 289, 291-292 [1995]; *see People v Chase*, 85 NY2d 493, 499-500 [1995]; *People v Wilhelm*, 34 AD3d 40, 44 [2006]). While we recognize that the absence of prejudice does not serve to excuse the People's failure to comply with the notice provisions of CPL 710.30, the fact that defendant was aware

---

**2.** Tellingly, defendant does not argue now on appeal that this ruling was in error.

of the contents of the alleged admission and had an opportunity to move to suppress it indicates that counsel was faced with a difficult choice (*see People v Martinez*, 9 AD3d 679, 680 [2004], *lv denied* 3 NY3d 709 [2004]; *People v Scott*, 204 AD2d 995, 995 [1994], *lv denied* 84 NY2d 939 [1994]) and we are not prepared to say that his decision to proceed with the motion to suppress deprived his client of the effective assistance of counsel (*see People v Baldi*, 54 NY2d at 147; *People v Rodabaugh*, 26 AD3d at 600; *People v Gross*, 21 AD3d 1224, 1225 [2005]).

Also, defendant claims that counsel's failure to have defendant testify at trial rendered his assistance ineffective. We note that we do not know the circumstances under which the decision was made not to have defendant testify at trial and, therefore, it is outside the scope of this record (*see People v Callender*, 48 AD3d 976, 978 [2008]; *People v Mann*, 41 AD3d 977, 982 [2007], *lv denied* 9 NY3d 924 [2007]; *People v Parker*, 220 AD2d 815, 817 [1995], *lv denied* 87 NY2d 1023 [1996]). In any event, the decision whether a defendant will testify at trial is a strategic one to be made by defendant in consultation with counsel (*see People v Terry*, 309 AD2d 973, 974 [2003]). Moreover, defendant had testified before the grand jury and much of his testimony in that proceeding was established through the introduction of other evidence at trial. For example, defense counsel was able to elicit through the cross-examination of witnesses who testified at trial that defendant had steadfastly denied the allegations that he had sexually assaulted the victim, he had no prior criminal record, no other allegation of a sexual assault had ever been made against him, he was actively involved in his church and he was an active participant in his seven children's after-school activities. We also note that defendant's grand jury testimony was riddled with inconsistencies with other testimony before the grand jury which, if fully developed at trial, could well have had an adverse impact upon his credibility. Accordingly, we cannot conclude that the decision not to have defendant testify at trial amounted to ineffective assistance of counsel (*see People v Lowin*, 36 AD3d 1153, 1156 [2007], *lvs denied* 9 NY3d 847, 878 [2007]; *People v Coleman*, 296 AD2d 766, 768 [2002], *lv denied* 99 NY2d 534 [2002]).

Finally, we disagree that County Court improperly injected itself into the jury's deliberations or in any way pressured the jury to arrive at a verdict by telling the jury that if it did not reach a final decision within 20 minutes, the court would adjourn the trial for the weekend (*see People v Randall*, 9 NY2d 413, 425 [1961]; *Hill v Edinger*, 281 App Div 1052, 1053 [1953]; *compare People v Carter*, 40 NY2d 933, 934 [1976]). County

Court repeatedly told the jury in this instruction that it was not pressuring the jury to arrive at a verdict, the jury should take whatever time it needed to deliberate before arriving at a verdict and, since it was 6:00 P.M. on a Friday evening, the court would adjourn for the weekend and allow the jury to resume deliberations the following Monday morning. The court's instructions, under all of the circumstances, were not improper.

Cardona, P.J., Mercure, Spain and Lahtinen, JJ., concur. Ordered that the judgment is affirmed.