[736 NYS2d 781]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ROGER STOKES, Appellant.

Third Department, January 24, 2002

## APPEARANCES OF COUNSEL

*Ziff, Weiermiller, Hayden & Mustico*, Elmira (*Richard W. Rich, Jr.,* of counsel), for appellant.

*John R. Trice, District Attorney,* Elmira (*Charles H. Metcalfe* of counsel), for respondent.

## OPINION OF THE COURT

SPAIN, J.

Following a jury trial, defendant was convicted of aggravated

harassment of an employee by an inmate (Penal Law § 240.32) for spraying a liquid substance later determined to be a combination of urine and feces at a correction counselor who was making her rounds at the Southport Correctional Facility in Chemung County on February 18, 1997. Following a post-trial hearing (*see*, CPL 400.20 [9]), defendant was sentenced as a persistent felony offender to an indeterminate prison term of 15 years to life which, by statute, is to be served consecutively to the undischarged sentences currently being served by defendant (*see*, Penal Law § 70.25 [2-a]). A previous *Anders* brief was determined to be inappropriate in this appeal (95 NY2d 633). Defendant now appeals, challenging, *inter alia*, the weight of the evidence and the sentence imposed.

■ Defendant's initial contention is that the verdict was contrary to the weight of the evidence, focusing on the fact that the counselor did not actually observe defendant projecting the substance at her and no evidence was discovered upon a search of defendant's cell establishing his identity as the perpetrator. However, the counselor testified that, seconds before this incident, while she was in the C Block, Gallery 2 speaking with an inmate in cell 11 with cell 10 to her right, she saw a sheet hanging in cell 10 move to the side and then heard squirting sounds emanating from cell 10. She was then sprayed on the right side of her face, neck and other areas of her body with the liquid substance. She observed that the mixture came from cell 10, a single cell where defendant was housed by himself in 23-hour lock down. The week before, the counselor had cited defendant in a misbehavior report after witnessing him engage in conduct in violation of prison rules.

While a subsequent search of defendant's cell approximately 15 minutes after the attack failed to reveal the presence of any of the sprayed urine/fecal substance or the container, if any, used to expel the substance, the jury could reasonably have concluded that the delay in the search afforded defendant ample opportunity to clean up and dispose of any incriminating evidence. Further, the testimony of the inmate in cell 8—that he witnessed the incident using a small mirror and that the substance emanated from cell 12, not cell 10—created a credibility issue for the jury to resolve (*see*, *People v Brockway*, 277 AD2d 482, 484).

The counselor's testimony that the substance emanated from cell 10, which was immediately adjacent to her and which—indisputably—defendant alone occupied, was neither incredible

nor unworthy of belief (*see, People v Wright*, 214 AD2d 759, 762, *lv denied* 86 NY2d 805). Viewed as a whole and in a neutral light, the testimony convincingly established that defendant, an inmate, "with intent to harass, annoy, threaten or alarm a person in a facility," the correction counselor, whom defendant "kn[ew] or reasonably should [have known] to be an employee of such facility * * *, cause[d] * * * such employee to come into contact with * * * urine or feces, by throwing, tossing or expelling such fluid or material" (Penal Law § 240.32). Thus, while a different verdict would not have been unreasonable, upon our independent review of the trial evidence, and " 'weigh[ing] the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony' " (*People v Bleakley*, 69 NY2d 490, 495, quoting *People ex rel. MacCracken v Miller*, 291 NY 55, 62), we do not find that the jury failed to give the evidence the weight it should be accorded (*see, People v Bleakley, supra,* at 495; *People v Krug*, 282 AD2d 874, 878).

■ ■ With regard to defendant's claim that he was entitled to a circumstantial evidence charge, there was direct evidence regarding defendant's sole presence in the cell from which the substance emanated and, thus, no such charge was warranted (*see, People v Brockington*, 199 AD2d 570, 571, *lv dismissed* 82 NY2d 922; *cf., People v Sanchez*, 61 NY2d 1022, 1023). Further, we find no abuse of discretion in County Court's decision to permit defendant's legs to remain shackled during the trial, a decision which was expressly based on security concerns attributable to, *inter alia*, defendant's criminal history, his inmate disciplinary record and the nature of the crime charged (*see, People v Freeman*, 184 AD2d 864, 865, *lv denied* 80 NY2d 903; *People v Greiner*, 156 AD2d 813, 817, *lv denied* 75 NY2d 919).

■ Defendant next challenges County Court's imposition of a consecutive 15-year to life prison sentence under the persistent felony offender statute (*see,* Penal Law §§ 70.10, 70.25 [2-a]). Defendant contends that it is harsh and excessive as out of proportion to the harm inflicted and that, viewed in the context of extended special housing unit confinement, this crime is not the moral equivalent of the type of crimes which warrant an A-1 felony sentence.

The class E nonviolent felony crime for which defendant was convicted—aggravated harassment of an employee by an inmate—was created in 1996 "to address the dramatic increase in the number of reported cases of inmates in State correctional

facilities throwing, tossing or expelling excrement, urine, blood or other bodily fluids at correction officers" (*People v Trammel*, 282 AD2d 829, 829, *lv denied* 96 NY2d 908, citing Donnino, Practice Commentary, McKinney's Cons Laws of NY, Book 39, Penal Law § 240.32, at 401). The Legislature explained the need to add this crime, as follows:

> "Within the past decade, there have been over 200 reported cases of inmates in state correctional facilities throwing, tossing or expelling excrement, urine, blood or other bodily fluids at correctional officers. In addition to the vile and degrading nature of such conduct, the possibility for the transmission of diseases makes this conduct potentially a health risk for correctional officers, employees of the division of parole and employees of the office of mental health located within a correctional facility. While administrative and disciplinary remedies are available for inmates who engage in this type of conduct, these remedies have not been effective in curbing this behavior" (Legislative Mem in Support, 1996 McKinney's Session Laws of NY, at 2060).

Notably, while the maximum prison sentence for an E felony is an indeterminate term of $1\frac{1}{3}$ to 4 years (*see*, Penal Law § 70.00 [2] [e]; [3] [b]) and the maximum prison sentence for this particular E felony under the second felony offender statute—as specifically enhanced by the Legislature—is $2\frac{1}{2}$ to 5 years (*see*, Penal Law § 70.06 [3] [e]; [4] [b]), the authorized sentence under the persistent felony offender statute upon a conviction for any felony (including this nonviolent E felony) is a maximum of life imprisonment and a minimum of not less than 15 years nor more than 25 years—the sentence range authorized for class A-1 felonies (*see*, Penal Law § 70.10 [2]; § 70.00 [2] [a]; [3] [a] [i]). Thus, defendant received the minimum authorized persistent felony offender sentence.

In sentencing defendant, County Court conducted a hearing in compliance with CPL 400.20 at which defendant testified. The People submitted evidence establishing beyond a reasonable doubt that defendant had previously been convicted of two or more felonies as required by Penal Law § 70.10 (1) (a), (b) and (c) (*see*, CPL 400.20 [5]), including (1) a conviction of first degree robbery for which he was sentenced in 1979 to 7 years' imprisonment (*see*, *People v Stokes*, 96 AD2d 875; *see also*, *People v Stokes*, 83 AD2d 968); (2) two third degree burglary

convictions for separate incidents for which he was sentenced in 1985 to concurrent prison terms of 2½ to 5 years (counted as one prior felony); (3) a robbery in the first degree conviction for which he was sentenced in March 1989 to 6 to 12 years in prison as a second felony offender; and (4) an attempted robbery in the second degree conviction for which he was sentenced as a second violent felony offender in May 1989 to 3½ to 7 years' imprisonment (*see, People v Stokes*, 165 AD2d 763, *lv denied* 76 NY2d 991). The challenges raised by defendant at the hearing to the convictions underlying the 1985 and 1989 sentences were conclusory, unsupported by any credible evidence, belied by the record before County Court and failed to establish the unconstitutionality of any of the predicate felonies (*see, People v Berardo*, 251 AD2d 704, 705; *People v Robare*, 226 AD2d 837, 838). Thus, the court correctly concluded that defendant was a persistent felony offender (Penal Law § 70.10 [1]), and neither defense counsel nor defendant in his *pro se* brief disputes that conclusion.

Turning to the second prong of the persistent felony offender statute, upon careful review we cannot conclude that County Court abused its discretion in determining that defendant's "history and character" and "the nature and circumstances of his criminal conduct indicate that extended incarceration and life-time supervision will best serve the public interest" (Penal Law § 70.10 [2]; *see,* CPL 400.20 [9]; *see also, People v Moore*, 285 AD2d 827, 829; *People v Hart*, 266 AD2d 698, 701, *lv denied* 94 NY2d 880). The court afforded defendant ample opportunity to be heard, addressed defendant's individual history and stated its reasons at length, emphasizing defendant's history of felonies dating back to 1979—many of which involved violence. Also stressed were the planned nature of the present crime, which the court described as reprehensible and degrading, and the need to condemn and deter such conduct within prisons (*see, People v Andre*, 232 AD2d 884, 886, *lv denied* 89 NY2d 918).

In declining to disturb defendant's sentence, we have considered the gravity of imposing an A-1 felony sentence—even the minimum authorized prison sentence of 15 years to life—for this E felony rather than the maximum authorized sentence of 2½ to 5 years under the second felony offender statute. We also recognize that this conduct, previously addressed in the prison disciplinary system, is often committed by inmates who have previously been convicted of two or more felonies exposing them to A-1 sentencing as predicate felons

under Penal Law § 70.10 (1). However, the combination of significant negative factors present here supports that result, particularly defendant's almost 20-year history of violent criminal conduct, his lengthy inmate disciplinary history, including assaults on prison staff, and the fact that his previous 1989 consecutive sentences were imposed under the second felony offender statutory scheme. Further, we perceive no error in County Court's reliance on the need to deter such conduct by inmates in imposing a lengthy sentence (*see, People v Farrar*, 52 NY2d 302, 305-306; *People v Suitte*, 90 AD2d 80, 83-84). Thus, despite the argument that defendant's conduct was an act of desperation of one confined to the special housing unit for several years, under the individual circumstances of this case, the determination to impose a persistent felony offender sentence was within the discretion of County Court. Also, in view of the foregoing, the sentence was not harsh or excessive (*see, People v Hart, supra*, at 701).

Finally, defendant's challenges to the persistent felony offender statute under *Apprendi v New Jersey* (530 US 466) are unpreserved and, in any event, have already been rejected (*see, People v Rosen*, 96 NY2d 329, *cert denied* 534 US —, 122 S Ct 224). Defendant's remaining contentions, including those raised in his *pro se* brief, have been examined and determined to lack any merit.

CARDONA, P. J., MERCURE, CREW III and CARPINELLO, JJ., concur.

Ordered that the judgment is affirmed.