■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DEWITT GIBSON, Appellant. [768 NYS2d 511]—

* In her brief, defendant's counsel repeatedly misstates that these incidents occurred "a few weeks apart."

Cardona, P.J. Appeals (1) from a judgment of the County Court of Schenectady County (Giardino, J.), rendered July 17, 2001, upon a verdict convicting defendant of the crimes of rape in the second degree, sodomy in the second degree and endangering the welfare of a child (two counts), and (2) by permission, from an order of said court (Tomlinson, J.), entered December 6, 2001, which denied defendant's motion pursuant to CPL 440.10 to vacate the judgment of conviction, without a hearing.

Defendant was charged in a six-count indictment with the crimes of rape in the first and second degrees, sodomy in the first and second degrees and endangering the welfare of a child (two counts) involving a 13-year-old girl, which allegedly occurred on December 16, 1999. Following a jury trial, defendant was convicted of rape in the second degree, sodomy in the second degree and two counts of endangering the welfare of a child. He was sentenced, as a persistent felony offender, to concurrent terms totaling 15 years to life in prison.[1]

Initially, defendant argues that the verdict was against the weight of the evidence. Here, the victim testified that on December 16, 1999, she left her home at 8:00 A.M. for school. She saw defendant, an acquaintance, and decided to walk with him. The victim accompanied him to the state lottery building in the City of Schenectady, Schenectady County, where, in the seventh floor men's room, he raped and anally sodomized her. Although she was told not to tell anyone about the sexual as-

---

1. Defendant's CPL 440.10 motion to vacate the judgment of conviction was denied without a hearing and he appeals from that order, by permission. However, he has failed to address any of the issues raised therein on appeal. Accordingly, that appeal is deemed abandoned (*see People v Brodus*, 307 AD2d 643, 644 n [2003], *lv denied* 100 NY2d 618 [2003]; *People v Ciborowski*, 302 AD2d 620, 623 [2003], *lv denied* 100 NY2d 579 [2003]).

sault, she told her sister a few hours later and the police were summoned. The victim was examined at the hospital by Carol Braungart, a clinical nurse specialist, who collected evidence for the sexual assault kit which was later submitted for laboratory analysis. Although the victim did not display any signs of physical trauma during the examination, Braungart testified that a pelvic examination revealed "cervical motion tenderness," indicating vaginal penetration. She also noted rectal tenderness during swabbing.

Ronald Hesnor, a former Schenectady police investigator, testified that on December 16, 1999, defendant appeared at the police station and gave a handwritten account of what transpired. Although defendant admitted that he walked with the victim to the lottery building where he used the seventh floor men's room, he essentially denied any other involvement. Defendant wrote his age, "36," and date of birth, "9/16/63," on the top of the statement form, which was admitted into evidence.

Julie Mayo, a forensic scientist, stated that she found sperm in the victim's vaginal and anal smears. John Brenner, another forensic scientist, testified that he quantified the DNA extracted from cuttings obtained from the vaginal and anal swabs, as well as controlled blood samples from the victim and defendant, and generated profiles for each except for the vaginal swab. He indicated there was not a sufficient amount of DNA derived from sperm present in the vaginal swab to obtain a DNA profile. The DNA profile from the anal swab, however, contained body fluids from two individuals, which, when analyzed, revealed contributions of DNA from the nonsperm cells of the victim and DNA from sperm cells consistent with defendant's DNA. Stephen Swinton, Supervisor of DNA Services at the State Police Forensic Investigation Center, performed a statistical analysis of this DNA mixture profile and calculated a "combined likelihood ratio." Swinton concluded that the DNA mixture profile was 93 trillion 830 billion times more likely to be the result of contributions from the victim and defendant than the victim and a randomly selected male. " '[W]eigh[ing] the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony' " and according deference to the jury's opportunity to hear the testimony and observe the witnesses' demeanor, we conclude that the jury gave the evidence the proper weight (*People v Bleakley*, 69 NY2d 490, 495 [1987], quoting *People ex rel. Mac-Cracken v Miller*, 291 NY 55, 62 [1943]; *see* CPL 470.15 [5];

*People v Sullivan*, 300 AD2d 689, 691-692 [2002], *lv denied* 100 NY2d 587 [2003]).[2]

Next, defendant contends that County Court erred by denying his request to charge sexual abuse in the second degree as a lesser included offense of the charges of rape in the second degree and sodomy in the second degree. We disagree. Just as it is possible to commit the crimes of rape in the first degree and sodomy in the first degree without concomitantly, by the same conduct, committing sexual abuse in the first degree (*see* CPL 1.20 [37]; *People v Ford*, 76 NY2d 868, 869-870 [1990]; *People v Wheeler*, 67 NY2d 960, 962 [1986]; *People v Glover*, 57 NY2d 61 [1982]), by analogous reasoning, it is possible to commit rape in the second degree and sodomy in the second degree (*see* Penal Law § 130.30 [1]; § 130.45 [1]) without also committing sexual abuse in the second degree (*see* Penal Law § 130.60). Therefore, we find that sexual abuse in the second degree is not a lesser included offense of second degree rape (*see People v Jones*, 133 AD2d 972, 974 n 3 [1987], *lv denied* 70 NY2d 956 [1988]) or second degree sodomy and County Court's denial of defendant's request to charge it was proper.

We turn to defendant's contention that he was deprived of his constitutional right to confront his accuser when County Court precluded him from cross-examining the victim about an allegedly false rape accusation made against another individual. That accusation was supposedly made some six months after the occurrence of the acts complained of herein. Initially, we note that defendant's reliance upon CPL 60.42 (5) as the basis for permitting such cross-examination is misplaced. CPL 60.42 (5) permits evidence of a victim's sexual *conduct* in the prosecution of a sex offense if the court determines it "to be relevant and admissible in the interests of justice." A victim's *complaint* of an unrelated sex crime falls outside the scope of CPL 60.42. Therefore, a complaint's admissibility for purposes of impeachment rests within the discretion of the trial court (*see People v Mandel*, 48 NY2d 952, 954 [1979], *appeal dismissed and cert denied* 446 US 949 [1980]; *People v Sprague*, 200 AD2d 867, 868 [1994], *lv denied* 83 NY2d 877 [1994]). We are of the view that defendant's proffer of proof failed to sufficiently prove the falsity of the complaint or that the allegedly false complaint was "suggestive of a pattern that cast doubt on the validity of, or bore a significant probative relation to, the instant charges" (*People v Sprague, supra* at 868). Accordingly, County Court did not abuse its discretion by restricting defendant's cross-examination nor

---

**2.** We note that sexual intercourse "occurs upon any penetration, however slight" (Penal Law § 130.00 [1]).

was defendant deprived of his constitutional confrontation rights.

Next, we find no merit in defendant's contention that he was deprived of his right to the effective assistance of counsel. Under the circumstances of this case, viewed in their totality as of the time of the representation, we find defendant's attorney provided meaningful representation (*see People v Baldi*, 54 NY2d 137, 147 [1981]). Notably, defense counsel made appropriate pretrial and trial motions, vigorously cross-examined the People's witnesses, presented a defense witness, advanced cogent arguments in defendant's defense and employed a trial strategy which successfully secured acquittal of the charges of first degree rape and sodomy. With respect to defendant's contention that his counsel was ineffective for failing to notify the People of his desire to testify before the grand jury, even assuming record support for the claim, that lapse does not, by itself, amount to ineffective assistance of counsel (*see People v Wiggins*, 89 NY2d 872, 873 [1996]; *People v Abdullah*, 298 AD2d 623, 624 [2002]; *People v Dennis*, 295 AD2d 755, 756 [2002], *lv denied* 99 NY2d 534 [2002]; *People v Mejias*, 293 AD2d 819, 820 [2002], *lv denied* 98 NY2d 699 [2002]). Moreover, defendant has failed to "demonstrate the necessary absence of strategic or other legitimate explanations for his counsel's failure to pursue [that] course of action" (*People v Brown*, 227 AD2d 691, 693 [1996], *lv denied* 88 NY2d 980 [1996]; *see People v Abdullah, supra* at 624).

Turning to defendant's contention that his sentence was harsh and excessive, we find his arguments unpersuasive. County Court conducted a posttrial hearing (*see* CPL 400.20 [9]) and properly concluded that defendant was eligible for enhanced sentencing as a persistent felony offender. Furthermore, we cannot say "that County Court abused its discretion in determining that defendant's 'history and character' and 'the nature and circumstances of his criminal conduct indicate that extended incarceration and life-time supervision will best serve the public interest' " (*People v Stokes*, 290 AD2d 71, 76 [2002], *lv denied* 97 NY2d 762 [2002], *cert denied* 537 US 859 [2002], quoting Penal Law § 70.10 [2]; *see* CPL 400.20 [9]). In addition, the concurrent terms of 15 years to life imprisonment were not only authorized under the persistent felony offender statute, but were in fact the minimum authorized persistent felony offender sentences (*see* Penal Law § 70.00 [2] [a]; [3] [a] [i]; § 70.10 [2]). In view of the foregoing, and considering the crimes perpetrated upon this young child, the sentence was neither harsh nor excessive nor do we find any extraordinary circum-

stances warranting modification in the interest of justice (*see* CPL 470.15 [3] [c]; [6] [b]; *People v Morey*, 304 AD2d 855 [2003], *lv denied* 100 NY2d 564 [2003]; *People v Stokes, supra*).

We have also considered defendant's pro se argument based upon a claimed violation of the holding in *Apprendi v New Jersey* (530 US 466 [2000]) and find it meritless (*see People v Rosen*, 96 NY2d 329, 334-335 [2001], *cert denied* 534 US 899 [2001]).

Finally, defendant's remaining arguments have been examined and found to be either unpreserved or lacking in merit.

Crew III, Peters, Mugglin and Kane, JJ., concur. Ordered that the judgment and order are affirmed.