Kavanagh, J.
On a weekend in October 2009, victim A was dropped off by her mother at defendant’s residence and spent Friday evening at his home. The following morning she left, and returned later that evening with victim B; both girls — who were 10 years old at the time — spent the night at defendant’s residence. Six weeks later, after victim A was questioned by a physician as to whether she had been sexually abused, both victims reported that they *977 had been sexually assaulted by defendant while at his residence.[1] As a result, defendant was arrested and later charged by indictment with predatory sexual assault (two counts), predatory sexual assault against a child (two counts), rape in the first degree (two counts), criminal sexual act in the first degree, sexual abuse in the first degree and course of sexual conduct against a child. After a jury trial, defendant was convicted as charged and sentenced, as a second child sexual assault felony offender, to various prison terms, the maximum of which was 25 years to life, with 20 years of postrelease supervision. He now appeals.
Defendant first argues that the evidence at trial was legally insufficient to establish that he actually had sexual intercourse with victim B, and therefore his convictions for rape in the first degree (count 2), predatory sexual assault (count 6) and predatory sexual assault against a child (count 9) must be reversed and those charges dismissed (see Penal Law §§ 130.35 [3]; 130.95 [2]; 130.96). “ ‘Sexual intercourse’ has its ordinary meaning and occurs upon any penetration, however slight” (Penal Law § 130.00 [1]; see People v Newkirk, 75 AD3d 853, 858 [2010], lv denied 16 NY3d 834 [2011]; People v Sanchez, 69 AD3d 434, 434 [2010], lv denied 14 NY3d 844 [2010]; People v Brown, 67 AD3d 1197, 1198 [2009]; People v Gibson, 2 AD3d 969, 972 n 2 [2003], lv denied 1 NY3d 627 [2004]; Matter of Zachary K., 299 AD2d 755, 756 [2002]). Defendant contends that, while victim B testified that he had sexual intercourse with her, she never stated that penetration in fact occurred, and no physical evidence was presented confirming that sexual intercourse, as that term is legally defined, had taken place. We disagree. Viewing this victim’s testimony “in the light most favorable to the prosecution,” we find that a juror could rationally conclude that penetration did in fact occur and sexual intercourse did indeed take place (People v Carroll, 95 NY2d 375, 382 [2000] [internal quotation marks and citations omitted]; see People v Verrilli, 69 AD3d 963, 963 [2010], lv denied 14 NY3d 894 [2010]).[2]
Defendant also argues that his conviction of course of sexual conduct against a child in the first degree (count 5) was against *978 the weight of the evidence. A person is guilty of this crime “when, over a period of time not less than three months ... he or she engages in two or more acts of sexual conduct, which includes at least one act of sexual intercourse, oral sexual conduct, anal sexual conduct or aggravated sexual contact, with a child less than [11] years old” (Penal Law § 130.75 [1] [a]). Victim A testified that defendant engaged her in oral sexual conduct and sexual intercourse on multiple occasions during the weekend in October 2009, and on four other occasions when she was about four years old — or some six years prior to the October 2009 incident at defendant’s residence. “According due deference to the jury’s credibility determinations and viewing the evidence in a neutral light,” we conclude that the jury’s verdict as to this charge was supported by the weight of the credible evidence introduced at trial (People v Muniz, 93 AD3d 871, 875 [2012]; see People v Bleakley, 69 NY2d 490, 495 [1987]; People v Schroo, 87 AD3d 1287, 1288 [2011]; People v Nowinski, 36 AD3d 1082, 1083 [2007], lv denied 8 NY3d 989 [2007]).
Defendant also claims that he was denied the effective assistance of counsel. At the outset, we note that the record demonstrates that defendant’s counsel at trial vigorously cross-examined the People’s witnesses, including both victims, made appropriate and often successful objections to evidence sought to be admitted by the People, and established that no DNA or physical evidence existed that would serve to corroborate the victims’ assertions that they were sexually abused by defendant (see generally People v Baldi, 54 NY2d 137, 147 [1981]; People v Weatherspoon, 86 AD3d 792, 794 [2011], lv denied 17 NY3d 905 [2011]; People v King, 79 AD3d 1277, 1280 [2010], lv denied 16 NY3d 860 [2011]). However, defendant claims that counsel made an egregious error that deprived him of effective representation when she provided the People with videotape recordings that defendant had made at his residence at the time that the victims claimed he sexually abused them. It is important to note that these recordings were delivered to the People by his counsel at defendant’s insistence because he believed that they exonerated him and were not inculpatory. In fact, when viewed without the victims’ testimony, the recordings are fairly benign and do not graphically depict any untoward conduct by defendant with the victims while they were at his residence. Only after each victim provided a narrative that supplemented what was visible on the recordings did it become clear that brief segments contained ev *979 idence that was actually adverse to defendant’s interest.[3] As such, counsel, in complying with her client’s directives, may have concluded that the recordings were, on balance, exculpatory and had a strategic reason for disclosing them to the People prior to the commencement of trial (see People v Blackman, 90 AD3d 1304, 1311 [2011]; People v Arnold, 85 AD3d 1330, 1332 [2011]; see generally People v Cherry, 46 AD3d 1234, 1238 [2007], lv denied 10 NY3d 839 [2008]). In addition, counsel made a timely objection that was overruled when the People sought to introduce these segments of the recordings at trial.
Defendant also claims that counsel inartfully cross-examined certain prosecution witnesses with the result that inculpatory evidence otherwise inadmissible was received into evidence at trial against him. Specifically, he challenges counsel’s decision to elicit, on cross-examination of victim A’s physician, the fact that the child had been examined during a medical appointment after the alleged sexual assaults took place for a preexisting condition involving genital warts. However, it appears that counsel pursued this line of questioning to establish that the victim had this appointment with the doctor to address a preexisting medical condition and not to report that she had been sexually assaulted by defendant. Also, defendant challenges the wisdom of counsel’s cross-examination of an expert witness for the People who confirmed that children had been reported to have testified falsely about sexual assaults, but that such instances were rare. Again, a strategic objective consistent with defendant’s interest may well have been served by having this witness acknowledge that reports of sexual assaults made by children have been found to be false, suggesting that such a circumstance was not unprecedented (see People v Blackman, 90 AD3d at 1311; People v Arnold, 85 AD3d at 1332).
Finally, we do not find that County Court erred in barring cross-examination of victim A regarding sexual contact that she may have had with individuals other then defendant. Victim A testified, in support of the charge of course of sexual conduct against a child in the first degree, that, prior to October 2009, she had been sexually assaulted by defendant in the presence of defendant’s friend “Bill.” On cross-examination, defendant sought to question her about any sexual contact that she may *980 have had with “Bill.” County Court found that this proffered testimony served no relevant or legitimate purpose and ruled that it was barred by the Rape Shield Law. In that regard, the record establishes that this line of inquiry was not being pursued by defendant to establish that the victim had a history of filing false complaints regarding allegations of sexual assault or that defendant sought to raise any question regarding his identity as the perpetrator of the crimes charged in the indictment (see People v Segarra, 46 AD3d 363, 364 [2007], lv denied 10 NY3d 816 [2008]). The Rape Shield Law was designed to curtail such an inquiry, especially where it was not relevant in determining whether the crimes charged in the indictment had been committed, or whether defendant had perpetrated them.
Rose, J.P., Spain, Malone Jr. and Egan Jr., JJ., concur. Ordered that the judgment is affirmed.

. Victim A alleged that defendant compelled her to engage in oral sex, as well as sexual intercourse. Victim B testified that she was compelled to have sexual as well as anal intercourse with defendant.

. Specifically, victim B testified that she woke up and “felt someone like putting his penis in my vagina” and while she stated that he did not put it inside “the hole,” she stated that “[i]t was just touching [the hole].” Moreover, on cross-examination, when defendant’s counsel asked her whether the penis had gone inside, victim B said that it did, that it “went inside and touched the hole.”

. Out of 24 hours of videotapes, less than 15 minutes was played for the jury and, of these 15 minutes, less than one minute could be considered incriminating. In one segment where victim A was partially visible, she testified to performing oral sex on defendant and, at another point, she can be heard asking him, “I can just suck it, right?” Victim B testified that she had been sexually assaulted by defendant when she was heard on the recording stating that she “just wanted to go home.”