■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LESTER D. LITTEBRANT II, Appellant. [867 NYS2d 550]—

Peters, J. Appeal from a judgment of the County Court of Chenango County (Sullivan, J.), rendered August 1, 2005, upon a verdict convicting defendant of the crimes of rape in the first degree (three counts), criminal sexual act in the first degree, rape in the third degree (two counts), criminal sexual act in the third degree, and endangering the welfare of a child (two counts).

Defendant was charged in a multicount indictment with various crimes arising from his August 2004 sexual contact with the then 15-year-old victim. The evidence revealed that the victim accompanied defendant's daughter on an extended visit to defendant's residence, which consisted of a room within the home of Robert Womack and Betty Womack in the City of Norwich, Chenango County. One evening, defendant procured alcohol for his daughter and the victim. When the victim became intoxicated and began yelling, defendant slapped her in her face, causing her to fall onto one of the beds in defendant's room. He told his daughter that he should kill the victim by slitting her throat and hide her body, and then tell her parents that she had run away. Upon overhearing this statement, the victim begged defendant not to kill her. Shortly thereafter, the three began watching a movie on one of the beds. At some point, the victim began vomiting and urinating as a result of her intoxication, and defendant told his daughter to go over to the other bed. According to the victim, defendant then got on top of her, held her down, and vaginally penetrated her with his penis. After that, defendant turned her over, held her by her abdomen and, despite her efforts to "squirm away," anally penetrated her. During this attack, which defendant's daughter witnessed, the victim cried, repeatedly asked defendant to stop and told him he was hurting her. Thereafter, defendant left the home and, according to the victim, when he returned, he again had nonconsensual sexual intercourse with her. The following day, when the victim and defendant's daughter returned to the home of the victim's parents, the victim disclosed the rapes to her mother.

Defendant, who proceeded pro se at trial with standby counsel,[1] testified on his own behalf. While admitting that he had sexual intercourse with the victim, defendant asserted that the conduct was consensual, denied that it occurred on two occasions and denied anal penetration of the victim. Defendant was ultimately convicted of rape in the first degree (three counts),

---

1. Defendant was represented by two different attorneys prior to trial, both of whom were relieved from their assignments upon his request. Standby counsel was appointed when defendant elected to proceed pro se.

criminal sexual act in the first degree, rape in the third degree (two counts), criminal sexual act in the third degree, and endangering the welfare of a child (two counts). Sentenced to an aggregate prison term of 23 years with five years of postrelease supervision, defendant now appeals.

Defendant initially contends that the indictment should have been dismissed because he was required to testify before the grand jury while wearing an orange jump suit and shackles. Procedurally, defendant's motion to dismiss the indictment on the ground that he was denied a fair opportunity to testify before the grand jury (*see* CPL 190.50 [5]), while timely filed within five days of his arraignment (*see* CPL 190.50 [5] [c]), was not on notice to the People and, as such, was properly dismissed (*see* CPL 210.20, 210.45 [1]). Although defendant subsequently filed another motion to dismiss the indictment on these same grounds, which was made on notice to the People, his failure to do so within the statutory time requirements constituted a waiver of his argument (*see* CPL 190.50 [5] [c]; *People v Thomas*, 24 AD3d 949, 949 [2005], *lv denied* 6 NY3d 819 [2006]; *People v Fells*, 279 AD2d 706, 709 [2001], *lv denied* 96 NY2d 758 [2001]).

Defendant next asserts that his waiver of immunity was invalid because he was "constructively without effective counsel" when he did so and, therefore, the waiver was taken in violation of his right to counsel (*see People v Chapman*, 69 NY2d 497 [1987]). Raised for the first time on appeal, this issue has not been preserved for our review (*see People v Kuykendall*, 43 AD3d 493, 494-495 [2007], *lv denied* 9 NY3d 1007 [2007]) and is, in any event, without merit. Defendant's additional challenges to the adequacy of this counsel are meritless, except we agree that his counsel should have renewed his request at the grand jury proceeding that defendant's handcuffs and prison clothing be removed and should have properly moved to dismiss the indictment. Nonetheless, viewing the evidence, the law and the circumstances of the case in totality and at the time of the representation, we find that defendant was provided with meaningful representation (*see People v Baldi*, 54 NY2d 137, 147 [1981]; *People v Ryan*, 46 AD3d 1125, 1126 [2007], *lv denied* 10 NY3d 939 [2008]).

Similarly unavailing is defendant's argument that County Court erred in dismissing a juror on the ground that he was grossly disqualified to serve. In determining whether a juror is grossly disqualified, the trial court must conduct a "probing, tactful inquiry" into the specific circumstances (*People v Bradford*, 300 AD2d 685, 688 [2002], *lv denied* 99 NY2d 612 [2003]; *see People v Anderson*, 70 NY2d 729, 730 [1987]). So long as this

has occurred, the court's determination will be accorded latitude and great deference, and should be set aside "only where the error is manifest" (*People v Smyers*, 167 AD2d 773, 773 [1990], *lv denied* 77 NY2d 967 [1991]; *see People v Leader*, 285 AD2d 823, 824 [2001], *lv denied* 97 NY2d 756 [2002]; *People v Butts*, 140 AD2d 739, 740 [1988]).

Here, the juror informed County Court that he had both a professional and personal long-term relationship with key defense witnesses, the Womacks. Further inquiry by the court revealed that the juror had worked with the Womacks throughout a 15-year period and considered them to be good friends. As this relationship was far more than a "nodding acquaintance" (*People v Provenzano*, 50 NY2d 420, 425 [1980]; *see People v Clark*, 125 AD2d 868, 870 [1986], *lv denied* 69 NY2d 878 [1987]), we cannot conclude that County Court abused its discretion in discharging the juror as grossly unqualified (*see People v Rentz*, 67 NY2d 829, 830-831 [1986]; *People v Branch*, 46 NY2d 645, 650-651 [1979]; *compare People v Klavoon*, 207 AD2d 979, 979-980 [1994], *lv denied* 84 NY2d 908 [1994]).[2]

Defendant also contends that many of his convictions were not supported by legally sufficient evidence and were against the weight of the evidence. Having failed to preserve his challenge to the sufficiency of the evidence supporting his convictions by making a particularized motion to dismiss directed at the specific deficiencies in the proof (*see People v Balram*, 47 AD3d 1014, 1015 [2008], *lv denied* 10 NY3d 859 [2008]; *People v Golden*, 37 AD3d 972, 973 [2007], *lv denied* 9 NY3d 844 [2007]), we address only his weight of the evidence challenge. Since a different conclusion by the jury would not have been unreasonable, we "must, like the trier of fact below, weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony" (*People v Romero*, 7 NY3d 633, 643 [2006] [internal quotation marks and citation omitted]; *see People v Danielson*, 9 NY3d 342, 348 [2007]).

We begin our weight of the evidence review by addressing defendant's claims with respect to the first sexual attack. Defendant contends that his convictions of rape in the first degree, criminal sexual act in the first degree and criminal sexual act in the third degree must be set aside because there was a lack of

_____

**2.** We note that although the juror advised County Court that the relationship would not affect his ability to be fair and impartial, such a statement is ineffective where, as here, a showing of implied bias has been made (*see People v Rentz*, 67 NY2d at 831; *People v Branch*, 46 NY2d at 651; *People v Meyer*, 78 AD2d 662, 664 [1980]).

credible evidence that he used forcible compulsion or that there was anal sexual contact. Forcible compulsion is defined, in relevant part, as "to compel by either . . . use of physical force; or . . . a threat, express or implied, which places a person in fear of immediate death or physical injury to . . . herself" (Penal Law § 130.00 [8] [a], [b]). When determining whether forcible compulsion was used, we must look at the state of mind the defendant's actions created in the victim (*see People v Davis*, 21 AD3d 590, 591-592 [2005]; *People v Newell*, 290 AD2d 652, 653-654 [2002], *lv denied* 98 NY2d 712 [2002]).

Here, the victim testified that defendant used physical force during the first rape by holding her down with his arms and his body during the vaginal penetration and then restraining her by her abdomen when he anally penetrated her (*see People v Oglesby*, 12 AD3d 857, 860 [2004], *lv denied* 5 NY3d 792 [2005]; *People v Newell*, 290 AD2d at 654; *People v Jackson*, 290 AD2d 644, 646 [2002], *lv denied* 98 NY2d 711 [2002]). Moreover, there was testimony, including from defendant himself, that shortly before the first rape, defendant hit the victim in the face and talked about killing her. Indeed, the victim testified that she feared for her safety and believed defendant would kill her (*see People v Jackson*, 290 AD2d at 646). Although defendant argues that the victim's testimony was inherently incredible and should not be accorded any weight, her account of the events prior to and during the first sexual attack were largely corroborated by defendant's daughter and, insofar as defendant provided a conflicting version of those events, this created a credibility determination for the jury to resolve (*see People v Nealon*, 36 AD3d 1076, 1078 [2007], *lv denied* 8 NY3d 988 [2007]; *People v Jiminez*, 36 AD3d 962, 964 [2007], *lv denied* 8 NY3d 947 [2007]). Further, the claimed inconsistencies in the victim's testimony, the fact that she had consumed alcohol prior to the rapes and her delay in reporting the incidents until she arrived home were fully explored during trial and did not render the victim's account incredible as a matter of law (*see People v Borthwick*, 51 AD3d 1211, 1214 [2008], *lv denied* 11 NY3d 734 [2008]; *People v Harp*, 20 AD3d 672, 673 [2005], *lv denied* 5 NY3d 852 [2005]; *People v Morey*, 304 AD2d 855, 856 [2003], *lv denied* 100 NY2d 564 [2003]). Thus, viewing the evidence in a neutral light and giving due deference to the jury's resolution of credibility issues (*see People v Campbell*, 17 AD3d 925, 926 [2005], *lv denied* 5 NY3d 760 [2005]), we find that the victim's testimony was given the weight it should be accorded and, consequently, defendant's convictions on the relevant counts (*see* Penal Law § 130.35 [1]; § 130.40 [2]; § 130.50 [1]) were not against the weight of the evidence.

Next, defendant argues that his convictions arising out of the second sexual attack are against the weight of the evidence because there was no credible evidence that a second sexual encounter occurred or that forcible compulsion was used in connection with the second rape. We disagree. The jury was entitled to credit the victim's testimony over that of defendant, a determination that we accord great deference (*see People v Romero*, 7 NY3d at 645). Moreover, as to forcible compulsion, our inquiry must focus on the evidence establishing the state of mind of the victim caused by defendant's conduct, that is, "not what the defendant would or could have done, 'but rather what the victim, observing [the defendant's] conduct, feared [he] would or might do if [the victim] did not comply with [his] demands' " (*People v Thompson*, 72 NY2d 410, 415-416 [1988], quoting *People v Coleman*, 42 NY2d 500, 505 [1977]; *see People v Davis*, 21 AD3d at 591-592). Relevant to this determination is the defendant's prior abusive behavior toward the victim (*see People v Cook*, 93 NY2d 840, 841 [1999]; *People v Black*, 304 AD2d 905, 908 [2003], *lv denied* 100 NY2d 578 [2003]), as well as "the age of the victim, the relative size and strength of the defendant and victim, and the nature of the defendant's relationship to the victim" (*People v Sehn*, 295 AD2d 749, 750 [2002], *lv denied* 98 NY2d 732 [2002]; *see People v Val*, 38 AD3d 928, 929 [2007], *lv denied* 9 NY3d 852 [2007]). Given the victim's age, defendant's superior size and strength, the fact that defendant had struck the victim only hours earlier, and the victim's testimony that she was terrified that defendant would follow through with his threat to kill her (*see People v Nailor*, 268 AD2d 695, 697-698 [2000]), we find that the jury's finding of forcible compulsion with regard to the second rape was supported by the weight of the evidence.

We do find merit, however, in defendant's contention that his conviction for rape in the first degree arising out of the second act of intercourse, premised on the victim's physical helplessness (count 11), was contrary to the weight of the evidence (*see* Penal Law § 130.35 [2]). While the victim briefly testified that, at the time defendant came home and raped her again, she was not "really saying anything" because she was urinating, vomiting and immobile, she fully recalled defendant's actions and never asserted that she was sleeping or otherwise unconscious, or that she was unable to protest as she had done during the first rape (*compare People v Fuller*, 50 AD3d 1171, 1174 [2008]; *People v Perkins*, 27 AD3d 890, 892 [2006], *lvs denied* 6 NY3d 897 [2006], 7 NY3d 761 [2006]; *People v Cole*, 212 AD2d 822, 823 [1995], *lv denied* 86 NY2d 733 [1995]). Thus, with no evidence that the victim was "physically unable to communicate

[her] unwillingness'' (Penal Law § 130.00 [7]), defendant's conviction for this crime must be dismissed.

Defendant's remaining contentions, including those raised in his pro se brief, are either unpreserved or have been reviewed and found to be lacking in merit.

Cardona, P.J., Rose, Kavanagh and Stein, JJ., concur. Ordered that the judgment is modified, on the facts, by reversing so much thereof as convicted defendant of the crime of rape in the first degree under count 11 of the indictment; dismiss said count and vacate the sentence imposed thereon; and, as so modified, affirmed.