■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JAMES CLAIRMONT, Appellant. [906 NYS2d 369]—

Garry, J. Appeal from a judgment of the County Court of Saratoga County (Scarano, J.), rendered April 13, 2009, upon a verdict convicting defendant of the crimes of criminal sexual act in the first degree (three counts), sexual abuse in the first degree (three counts) and assault in the third degree (two counts).

On the morning of February 15, 2008, police answered a call for emergency assistance in the Town of Gansevoort, Saratoga

County. Upon arrival, they met the victim, who had sought refuge in her neighbor's home and was distraught and apparently injured. Paramedics were summoned and, during her transport to the hospital, the victim revealed that, in addition to having been "beat up" by defendant—her boyfriend with whom she was living at the time—he had also sexually assaulted her.

Following a jury trial, defendant was convicted of three counts of criminal sexual act in the first degree, three counts of sexual abuse in the first degree and two counts of assault in the third degree. Defendant was sentenced to, among other things, concurrent prison sentences of 18 years to be followed by 12 years of postrelease supervision for his criminal sexual act in the first degree convictions and five years to be followed by 10 years of postrelease supervision for his sexual abuse in the first degree convictions. Defendant appeals.

Alleging that the evidence was legally insufficient and that the verdict was against the weight of the evidence, defendant challenges the element of forcible compulsion for his three criminal sexual act in the first degree and three sexual abuse in the first degree convictions.[1] Defendant does not dispute that three instances of sexual conduct occurred—two occurrences of anal sexual conduct and one of oral sexual conduct; instead he argues that the victim's admitted failure to say "no" or "stop" or otherwise manifest her unwillingness to engage in the sexual conduct amounts to a failure of the element of forcible compulsion. We do not agree.

As relevant here, forcible compulsion is compulsion by either physical force or "a threat, express or implied, which places a person in fear of immediate death or physical injury to . . . herself" (Penal Law § 130.00 [8]). In determining whether forcible compulsion was employed to overcome the victim's lack of consent, "[t]he proper focus is on the state of mind produced in the victim by the defendant's conduct" (*People v Thompson*, 72 NY2d 410, 416 [1988]), that is, " 'what the victim, observing [the defendant's] conduct, feared [he] would or might do if [the victim] did not comply with [his] demands' " (*id.* at 415-416, quoting *People v Coleman*, 42 NY2d 500, 505 [1977]; *see People v Maggio*, 70 AD3d 1258, 1258-1259 [2010]; *People v Littebrant*, 55 AD3d 1151, 1156 [2008], *lv denied* 12 NY3d 818 [2009]). Notably, defendant was significantly larger and stronger than the victim, they had been in a relationship and living together for approximately five months and, being alone with him in their

---

**1.** Defendant's claim was properly preserved; he sought dismissal upon this specific ground at the close of the People's case and again at the close of all evidence (*see People v Payne*, 3 NY3d 266, 273 [2004]).

trailer at 2:00 A.M., the victim was isolated at the time of the assault and sexual conduct (*see People v Maggio*, 70 AD3d at 1258-1259; *People v Littebrant*, 55 AD3d at 1156; *People v Sehn*, 295 AD2d 749, 750-751 [2002], *lv denied* 98 NY2d 732 [2002]).

With regard to the events of February 15, 2008, the victim testified that she was awoken at approximately 2:00 A.M. by defendant's "yelling and screaming" that she was "a whore" and other "nast[y] names," followed by his hitting her in the head and left hand and kicking her in the back and ribs while saying that "women [who] cheat . . . deserve to get treated like this."[2] The victim stated that defendant then forced her to have anal sex with him and that, although she was crying, she did not say anything at that point because "[she] was already scared for [her] life, and [she] didn't want to make it any worse than it already was." When defendant was finished, he left the bedroom but continued "screaming" and "pumping himself up some more" in the living room, which caused the victim to become even more frightened. The victim testified that defendant then returned to the bedroom and forced her to "give him oral sex" while continuing to verbally denigrate her, and that she complied because "[she] didn't want to get hit anymore." This was followed by another episode of forced anal sex, during which the victim continued her silence because she was scared that defendant would "start beating [her] again."

The victim's version of events was strongly supported by a taped phone conversation between her and defendant, recorded on February 16, 2008, and played for the jury at trial. During this conversation, defendant repeatedly apologized to the victim for the events of February 15, 2008, including the physical abuse and the anal sex, and admitted that "[it] was wrong of [him]" to have forced himself on her. He also told her that he has "anger problems," that "[he's] not going to put [his] hands on her again" and that "if [she] really loved [him] . . . [she] would stick by [his] side and see if [he] could get some help." The jury did not credit defendant's attempts to minimize the import of this conversation by arguing that he "wasn't really paying attention" during the conversation and that "[he] was gonna tell her [he] was sorry for anything at that point," and we are similarly unpersuaded.

Further supporting the victim's account was the testimony of both the nurse and doctor who examined her in the emergency room and the photographs taken during the victim's stay in the emergency room, which established that defendant inflicted

---

**2.** Apparently defendant thought that the victim had said another man's name while talking in her sleep.

extensive physical injuries on the victim. Additionally, the record demonstrates that the relationship between defendant and the victim was an abusive and controlling one. Defendant was convicted of two counts of assault in the third degree, which he does not challenge on appeal. These charges are based upon a December 2007 incident in which defendant physically assaulted the victim resulting in, among other things, the tearing out of a chunk of the victim's hair, and upon the events of February 15, 2008. Evidence of other incidences of defendant's violent and controlling behavior towards the victim during the time that they lived together was also adduced at trial. Such evidence of "abusive behavior and threatening atmosphere" is clearly relevant to the determination regarding whether forcible compulsion was employed to overcome the victim's unwillingness or induce compliance (*People v Fleegle*, 20 AD3d 684, 687 [2005], *lv denied* 5 NY3d 828 [2005], *cert denied* 547 US 1152 [2006]; *see People v Littebrant*, 55 AD3d at 1156; *People v Black*, 304 AD2d 905, 906-908 [2003], *lv denied* 100 NY2d 578 [2003]).

While the victim admitted that she did not tell him "no" or "stop" or otherwise clearly express her unwillingness in some way when defendant's assaultive conduct—the "hitting," "kicking," "yelling" and "screaming"—ceased and his sexual conduct began, the circumstances here were such that "the state of mind produced in the victim by the defendant's conduct" (*People v Thompson*, 72 NY2d at 416) rendered the sexual contact to be without consent due to forcible compulsion, even in the absence of a clear rebuff by the victim (*see People v Davis*, 21 AD3d 590, 591-592 [2005]; *People v Black*, 304 AD2d at 906-908; *People v Rogner*, 265 AD2d 688, 689 [1999]).

Accordingly, viewing the evidence in a light most favorable to the People and giving them the benefit of every favorable inference, we find that there is a " 'valid line of reasoning and permissible inferences which could lead a rational person to the conclusion' " that the element of forcible compulsion was established by the trial evidence (*People v Thompson*, 72 NY2d at 413, quoting *People v Bleakley*, 69 NY2d 490, 495 [1987]; *see People v Maggio*, 70 AD3d at 1260). Similarly, while a different verdict would not have been unreasonable, upon our review of all the credible evidence in a neutral light, and according great deference to the jury's resolution of issues of credibility, we find the verdict to be supported by the weight of the evidence (*see People v Maggio*, 70 AD3d at 1260; *People v Littebrant*, 55 AD3d at 1155; *People v Smith*, 302 AD2d 677, 679 [2003], *lv denied* 100 NY2d 543 [2003]; *People v Sehn*, 295 AD2d at 751).

Defendant's assertion that the prosecutor made improper and

prejudicial comments during summation is not preserved for our review due to the failure to object (*see People v Booker*, 53 AD3d 697, 704 [2008], *lv denied* 11 NY3d 853 [2008]; *People v Warner*, 45 AD3d 1182, 1183 [2007]) and, in any event, constituted fair comment on the evidence or proper response to defendant's summation (*see People v Warner*, 45 AD3d at 1183; *People v Beyer*, 21 AD3d 592, 595 [2005], *lv denied* 6 NY3d 752 [2005]). Finally, in light of the circumstances of the present crimes, defendant's criminal history and the absence of extraordinary circumstances, we do not find the sentences imposed by County Court to be harsh and excessive (*see People v Smith*, 302 AD2d at 680; *People v Sehn*, 295 AD2d at 751).

Spain, J.P., Lahtinen, Stein and McCarthy, JJ., concur. Ordered that the judgment is affirmed.