■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v KELLIE ST. ANDREWS, Appellant. [918 NYS2d 640]—

McCarthy, J.

Defendant was charged with five counts of unlawfully dealing with a child in the first degree, seven counts of endangering the welfare of a child and five counts of criminal nuisance in the second degree in connection with several parties alleged to have occurred on her property when minors were drinking alcohol and smoking marihuana. Defendant's husband was charged with similar crimes and the two were tried jointly, represented by the same counsel. Prior to and during the trial, County Court dismissed several counts and, with regard to defendant, ultimately submitted to the jury four counts of endangering the welfare of a child and four counts of unlawfully dealing with a child. The jury convicted her of one count of unlawfully dealing with a child and one count of endangering the welfare of a child, relating to a party that occurred on defendant's property on April 20-21, 2008. Defendant, who was sentenced to 60 days in jail and three years of probation, now appeals.

The conviction for unlawfully dealing with a child in the first degree was supported by legally sufficient evidence. As relevant

here, that crime is committed by anyone who "gives or sells or causes to be given or sold any alcoholic beverage" to a person less than 21 years of age (Penal Law § 260.20 [2]). At trial, competent evidence was introduced that defendant's 16-year-old son had a party in the field behind the family home attended by 20 to 40 individuals—most of whom were under 21—and that beer was consumed by many in attendance. A minor who attended the party testified that the day before the party was held, defendant purchased a case of beer for her son and his friends and "left it in [the truck] for us." While this witness acknowledged never being told by defendant that she purchased the beer for her son and his friends, it was proven at trial that this beer—a 30-pack of cans of Keystone Lite—was made available to anyone at the party and was entirely consumed by those in attendance. Another minor who attended the party, when asked at trial if he had ever been with defendant when she purchased beer for her son, testified, "Yeah, but she—like . . . she didn't actually give the beer to [her son]." The witness went on to describe how defendant left the beer in her vehicle where her son would have access to it. While defendant denied knowing that beer would be available and consumed at the party, she admitted being aware that her son would host a gathering and individuals under 21 would attend. She also acknowledged being home throughout the entire evening while the party took place. Moreover, defendant was seen at the party by several witnesses while she was walking in the midst of a number of individuals, some of whom were minors, who were drinking beer and making no attempt to conceal it. Viewed in a light most favorable to the prosecution, and giving the People the benefit of every favorable inference that can be rationally drawn from it, this evidence, taken as an integrated whole, supports the conclusion that defendant purchased the 30-pack of beer for her son's party and was aware that some, if not all of it, would be consumed by young adults under 21 (*see People v Gregory*, 78 AD3d 1246, 1248 [2010]; *People v Clairmont*, 75 AD3d 920, 923 [2010], *lv denied* 15 NY3d 919 [2010]). Hence, the evidence was legally sufficient to support the charge of unlawfully dealing with a child in the first degree.

The evidence supported the conviction for endangering the welfare of a child. The witnesses consistently testified that, while the party was occurring, defendant went outside to give the telephone to a teenaged boy who received a call. Several witnesses testified that many underage individuals were drinking alcohol on defendant's property when she came outside, she approached the area where they were congregating, and they made no efforts to hide their alcohol consumption. This evidence was

legally sufficient to establish that she endangered the welfare of several minors, who were invited onto her property and were present without their parents or guardians there to supervise them, by permitting them to ingest alcohol. Although some witnesses called into question whether defendant was able to see anyone drinking, or testified that the youths were not drinking when defendant brought out the phone, we defer to the jury's credibility determinations in that regard. Thus, that conviction was supported by the weight of the evidence (see People v Strickland, 78 AD3d 1210, 1212 [2010]; People v Bush, 75 AD3d 917, 919 [2010], lv denied 15 NY3d 919 [2010]).

Defendant is not entitled to a new trial because her defense was not affected by counsel's joint representation of defendant and her codefendant husband. Because joint representation may create a conflict of interest, "the court must ascertain, on the record, whether the defendant's decision to proceed with the attorney is an informed decision" (People v Recupero, 73 NY2d 877, 879 [1988]). If a court fails to make such an inquiry, as occurred here, reversal is only required "where the defendant demonstrates that a significant possibility of a conflict of interest existed bearing a substantial relationship to the conduct of the defense" (id.). For a defendant to prevail, the conflict of interest must have " 'affected' " the conduct of the defense or " 'operated on' " counsel's representation (People v Adeola, 51 AD3d 811, 812 [2008], quoting People v Abar, 99 NY2d 406, 409 [2003]; see People v Mainello, 29 AD3d 1175, 1177 [2006]).

Here, the indictment alleged that both defendant and her husband were responsible for providing the alcohol for the party and permitting minors to drink. Thus, the People did not assert different levels of culpability, which would suggest that different theories and defense tactics should have been pursued for each codefendant (compare People v Burwell, 53 NY2d 849, 851 [1981]). While counsel may have had an incentive to shift blame from the husband to defendant because the People tried to prove that she personally purchased alcohol for the party and he was more passively involved, counsel did not engage in such a maneuver (compare People v Adeola, 51 AD3d at 812).* Instead, counsel pursued the defense that neither defendant nor her husband was aware that drinking was occurring on their property and they did not purchase the alcohol. Defendant argues that conflict-free counsel could have aggressively cross-examined her husband to elicit exculpatory testimony, but her husband

---

* Counsel's failure in this regard may have operated to the disadvantage of defendant's husband, affecting his right to conflict-free counsel, but defendant can only prevail if her defense was affected.

did not inculpate her in any way and defendant has presented nothing more than her bare assertion implying that he may have possessed exculpatory information. Despite County Court not having addressed the joint representation, defendant is not entitled to reversal because she has not established that counsel's conflict of interest adversely affected or operated on counsel's representation of her (*see People v Recupero*, 73 NY2d at 879).

Rose, Kavanagh and Egan Jr., JJ., concur; Cardona, P.J., not taking part. Ordered that the judgment is affirmed, and matter remitted to the County Court of Washington County for further proceedings pursuant to CPL 460.50 (5).