THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DEVON BLACKMAN, Appellant. [935 NYS2d 181]—

Garry, J.

In August 2008, the victim left a bar in the City of Schenectady, Schenectady County accompanied by a man later identified as defendant. The victim has limited memory of what transpired in the next few hours, but she testified that she recalled standing on a street corner arguing with a man, hitting him, and then him choking her so severely that she began to lose consciousness. She next remembered standing with her back to the door of an unfamiliar apartment, feeling dazed and "very, very frightened." Finally, she recalled sitting on a couch with a man who demanded oral sex.[1] The victim testified that she complied out of fear that if she did not, "he was going to hurt me more." Some time later, the victim awoke alone in an unfamiliar apartment. Her face and body were bloody and bruised, and she felt severe pain in her face, vagina and anus. Upon leaving the apartment, she recognized that she was close to her own residence. Upon her arrival there, she told the babysitter who had been caring for her infant that she had been raped and beaten. The victim was hospitalized and treated for multiple injuries, including fractures of her jaw, the bone surrounding her eye socket and the bridge and spines of her nose, facial lacerations, a vaginal tear, severe anal pain, and contusions on her face, limbs and body, and a ligature mark on her neck. Police investigating a break-in at an apartment near the victim's home found blood, signs of struggle, and items belonging to her. The victim's memory loss prevented her from identifying her assailant, but forensic examination of DNA samples taken from her person and the apartment yielded a match with samples of defendant's DNA in a police database. Police interviewed defendant, who provided several inconsistent accounts before eventually stating that he met the victim at the bar on the night in question and later broke into an apartment, where he and the victim had consensual sex before falling asleep. He stated that, upon waking, he saw blood on the victim's face, and thought she had a nosebleed. He then left while she was sleeping.

Defendant was charged with three counts of predatory sexual

---

1. She testified that this was the same man who had choked her earlier in the evening, but qualified that testimony on cross-examination.

assault, two counts of criminal sexual assault in the first degree, two counts of assault in the first degree, and one count each of attempted murder in the second degree, rape in the first degree, and burglary in the second degree. After a bench trial, County Court (Hoye, J.) convicted him of all of these charges except attempted murder and one of the assault counts. Defendant was thereafter sentenced as a second felony offender to three concurrent prison terms of 25 years to life on the predatory sexual assault convictions, three consecutive 25-year terms for the rape and criminal sexual assault convictions, and two 15-year terms to run concurrently with the other sentences for the burglary and assault convictions. In addition, a period of five years of postrelease supervision was imposed as part of each sentence except those for predatory sexual assault. Thereafter, defendant moved pursuant to CPL 440.10 to vacate the judgment of conviction. County Court (Drago, J.) denied the motion without a hearing. Defendant appeals from the judgment of conviction and, by permission, from the denial of his CPL 440.10 motion.

Defendant first contends that the evidence was legally insufficient to support his convictions. We reject his claim that the evidence of forcible compulsion was insufficient to support the convictions for rape in the first degree (*see* Penal Law § 130.35 [1]; *People v Newkirk*, 75 AD3d 853, 858 [2010], *lv denied* 16 NY3d 834 [2011]) and criminal sexual act in the first degree (*see* Penal Law § 130.50 [1]). To engage in forcible compulsion is "to compel by either . . . use of physical force; or . . . a threat, express or implied, which places [the victim] in fear of immediate death or physical injury" (Penal Law § 130.00 [8] [a], [b]; *see People v Littebrant*, 55 AD3d 1151, 1155 [2008], *lv denied* 12 NY3d 818 [2009]). The existence of an implied threat is established by a "subjective inquiry into what a victim feared a defendant might have done if he or she did not comply" (*People v Porter*, 82 AD3d 1412, 1413 [2011], *lv denied* 16 NY3d 898 [2011]; *see People v Clairmont*, 75 AD3d 920, 921 [2010], *lv denied* 15 NY3d 919 [2010]). An implied threat of force was established here by the victim's memory of acceding to her assailant's sexual demand out of fear of a further attack (*see People v Porter*, 82 AD3d at 1414; *People v Littebrant*, 55 AD3d at 1155), as well as the considerable difference in size and strength between defendant and the petite victim (*see People v Clairmont*, 75 AD3d at 921; *People v Maggio*, 70 AD3d 1258, 1258-1259 [2010], *lv denied* 14 NY3d 889 [2010]; *People v Oglesby*, 12 AD3d 857, 860 [2004], *lv denied* 5 NY3d 792 [2005]). The medical evidence of the victim's extensive injuries, including those that were consistent with sexual assault, and her descriptions of her pain further established the use of physical

force (*see People v Clairmont*, 75 AD3d at 922-923; *People v Brown*, 39 AD3d 886, 888 [2007], *lv denied* 9 NY3d 873 [2007]). Defendant was linked to the victim's injuries by the DNA evidence, in particular DNA found around the victim's vagina and anus (*see People v Collins*, 56 AD3d 809, 810 [2008], *lv denied* 11 NY3d 923 [2009]; *People v Jacobs*, 37 AD3d 868, 869 [2007], *lv denied* 9 NY3d 923 [2007]), as well as the testimony of a witness who saw defendant outside the bar, arguing with the victim and grabbing her wrists, and his own admission that he saw blood on her face after having oral and vaginal intercourse with her while the two were alone in the apartment. Viewing this evidence in the light most favorable to the People, we find a "valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached" (*People v Bleakley*, 69 NY2d 490, 495 [1987]; *see People v Maricevic*, 52 AD3d 1043, 1044 [2008], *lv denied* 11 NY3d 790 [2008]).

Defendant failed to preserve his claim that his convictions for predatory sexual assault and assault in the first degree were not supported by legally sufficient evidence that the victim suffered a serious physical injury (*see* Penal Law § 10.00 [10]; § 120.10 [4]; § 130.95 [1] [a]; *People v Gray*, 86 NY2d 10, 20-21 [1995]). Considering the severity of the victim's injuries—which included multiple facial fractures, required her to undergo two surgeries, and left her, more than a year after the attack, with a limited ability to open her mouth, scarring on her neck, and permanent nerve damage manifested by numbness on the left side of her face and drooping of that side of her mouth—no modification in the interest of justice is warranted (*see People v Brabant*, 61 AD3d 1014, 1015-1016 [2009], *lv denied* 12 NY3d 851 [2009]; *People v Khuong Dinh Pham*, 31 AD3d 962, 965-966 [2006]; *compare People v Sleasman*, 24 AD3d 1041, 1042-1043 [2005]). Further, in view of our conclusion that the evidence was sufficient to establish forcible compulsion, there was also legally sufficient evidence that the victim was injured during the commission of the underlying sex crimes (*see* Penal Law § 120.10 [4]; § 130.95 [1] [a]).

The evidence was also legally sufficient to support the conviction for burglary in the second degree (*see* Penal Law § 140.25 [1] [b]). Defendant's intent to commit a crime when he entered the apartment " 'may be inferred from the circumstances of [his] unlawful entry, unexplained presence on the premises, and actions and statements when confronted by police or the property owner' " (*People v Vanbergen*, 68 AD3d 1249, 1250 [2009], *lv denied* 14 NY3d 806 [2010], quoting *People v Ostrander*, 46 AD3d 1217, 1218 [2007]). Defendant admitted to police that he

broke into the apartment, and his claim that he did so only after the victim told him that she lived there was belied by, among other things, the evidence that he had already struggled with her and choked her into near-unconsciousness and the victim's account of feeling frightened when she found herself outside the apartment door. Further, the falsity of such a claim by the victim would have been immediately apparent on entering the apartment, which was used as an office and furnished with such nonresidential items as file cabinets, printers, and desks. Thus, it may be rationally inferred from the evidence that defendant intended to commit a crime when he entered the apartment (*see People v Judware*, 75 AD3d 841, 844-845 [2010], *lv denied* 15 NY3d 853 [2010]; *People v Vasquez*, 71 AD3d 1179, 1180 [2010], *lv denied* 14 NY3d 894 [2010]). The blood and belongings of the victim and the disrupted furnishings in the apartment, in addition to defendant's admission that he saw blood on her face after having intercourse with her there, were legally sufficient to establish that he caused her injuries while inside the apartment (*see* Penal Law § 140.25 [1] [b]).

Defendant next asserts that his convictions are not supported by the weight of the evidence. While a different verdict would not have been unreasonable, we reject this claim (*see People v Bleakley*, 69 NY2d at 495; *People v Porter*, 82 AD3d at 1414). County Court (Hoye, J.) properly credited the extensive testimony describing the victim's injuries, defendant's admissions, and the DNA evidence linking him to the crimes. Any inconsistencies in the victim's testimony and her likely intoxication at the time were fully explored at trial and did not render her testimony incredible as a matter of law. Weighing the probative force of the conflicting testimony and the relative strength of any conflicting inferences to be drawn, and according deference to the factfinder's credibility determinations, we find the convictions supported by the weight of the credible evidence (*see People v Littebrant*, 55 AD3d at 1155-1156; *People v Borthwick*, 51 AD3d 1211, 1214-1215 [2008], *lv denied* 11 NY3d 734 [2008]).

County Court did not err in permitting the babysitter to testify that the victim said she had been raped and beaten. " 'An out-of-court statement is properly admissible under the excited utterance exception when made under the stress of excitement caused by an external event, and not the product of studied reflection and possible fabrication' " (*People v Auleta*, 82 AD3d 1417, 1418-1419 [2011], *lv denied* 17 NY3d 813 [2011], quoting *People v Johnson*, 1 NY3d 302, 306 [2003]). Determining whether the exception is applicable requires assessment of

the nature of the event, the elapsed time, and the declarant's activities during that period (*see People v Vasquez*, 88 NY2d 561, 579 [1996]; *People v Edwards*, 47 NY2d 493, 497 [1979]; *People v Auleta*, 82 AD3d at 1419). Here, the victim awoke in pain in a strange apartment, walked to a mirror, and saw her visible injuries. She testified that after lying down again briefly because she could not stand for long, she left the apartment and walked two doors down the street to her own residence "in a daze. In shock." The babysitter—the first person the victim encountered—immediately asked what had happened, and the victim responded with the challenged statement. The victim was plainly under "the continuing stress of the ordeal," and her statement was thus properly admitted (*People v Auleta*, 82 AD3d at 1419; *see People v Johnson*, 277 AD2d 702, 704-705 [2000], *lv denied* 96 NY2d 831 [2001]).

County Court also properly admitted hospital records containing statements made by the victim during her treatment. Defendant contends that the records were inadmissible because the victim's statements were obtained for forensic purposes and were not germane to her treatment or diagnosis (*see* CPLR 4518 [a]; *People v Wright*, 81 AD3d 1161, 1164 [2011], *lv denied* 17 NY3d 803 [2011]; *People v Kossman*, 46 AD3d 1104, 1106-1107 [2007]). The treating physician testified that she performed a forensic examination of the victim, asking her to recount the events of the previous night and to answer questions on a checklist as to how her injuries occurred.[2] The physician testified that the victim's responses were relevant for forensic purposes, and the information was also pertinent to her medical care and treatment. As the questions had the dual purpose of assisting in the investigation of the crime and the care and treatment of the victim's injuries, the victim's responses were properly admitted (*see People v Rogers*, 8 AD3d 888, 892 [2004]).[3] Moreover, if any error had occurred, it would have been harmless (*see People v Kello*, 96 NY2d 740, 744 [2001]; *People v Thomas*, 282 AD2d 827, 828-829 [2001], *lv denied* 96 NY2d 925 [2001]). Defendant's additional claim that admission of this evidence violated his right to confront witnesses was unpreserved (*see People v Wright*, 81 AD3d at 1164-1165). In any event, no such violation occurs where, as here, a defendant has the op-

---

**2.** The victim was asked, among other things, whether weapons were used, whether she was struck, grabbed, or strangled and whether contact occurred between her assailant's penis and various parts of her body.

**3.** The victim's statements were limited to the nature of her injuries and the means by which they were sustained; she did not identify defendant as her assailant (*compare People v Ortega*, 15 NY3d 610, 617-620 [2010]; *People v Wright*, 81 AD3d at 1164).

portunity to cross-examine the declarant (see *Crawford v Washington*, 541 US 36, 59 [2004]; *People v Goldstein*, 6 NY3d 119, 127 [2005], *cert denied* 547 US 1159 [2006]; *compare People v Duhs*, 16 NY3d 405, 408-410 [2011]). Notably, the victim's incomplete memory of the attack was thoroughly explored on cross-examination.

County Court properly denied defendant's motion for a mistrial based on his claim that the People committed a *Brady* violation by failing to disclose that the victim had made previous allegedly false claims of sexual abuse until two days before trial. To establish such a violation "a defendant must show that (1) the evidence is favorable to the defendant because it is either exculpatory or impeaching in nature; (2) the evidence was suppressed by the prosecution; and (3) prejudice arose because the suppressed evidence was material" (*People v Fuentes*, 12 NY3d 259, 263 [2009]). The court correctly determined that evidence concerning the victim's prior allegations was not material to this prosecution. Prior false rape complaints may be admissible when they "suggest a pattern casting substantial doubt on the validity of the charges made by the victim" or "indicate a significant probative relation to such charges" (*People v Mandel*, 48 NY2d 952, 953 [1979], *appeal dismissed and cert denied* 446 US 949 [1980]). Here, no such probative relationship existed. In the prior incident, the victim claimed that she was raped by a man whom she knew and identified. The instant prosecution did not result from the victim's identification; instead, defendant was implicated in the undisputed attack by DNA evidence and his own admissions. Even if it had been clearly established that the victim's prior allegations were false, they neither cast doubt upon, nor were they probative to, the current charges (see *id.*; *People v Lane*, 47 AD3d 1125, 1128 [2008], *lv denied* 10 NY3d 866 [2008]). Further, defendant was permitted to cross-examine the victim as to the truthfulness of the prior allegations (see *People v Cortijo*, 70 NY2d 868, 870 [1987]; *People v Newland*, 83 AD3d 1202, 1204 [2011], *lv denied* 17 NY3d 798 [2011]). Defendant contends that this cross-examination was improperly limited, but, for the reasons above, we agree with County Court that the issue of the victim's credibility was collateral to this case (see *People v Scott*, 67 AD3d 1052, 1054-1055 [2009], *affd* 16 NY3d 589 [2011]; *People v Bellamy*, 26 AD3d 638, 641 [2006]; *People v Brown*, 24 AD3d 884, 887-888 [2005], *lv denied* 6 NY3d 832 [2006]).

Defendant next contends that his sentence is harsh and excessive. He has a lengthy prior criminal history, beginning at the age of 19, primarily involving drug offenses, and was released

on parole after a felony drug conviction only 2½ months before committing the subject crimes. In view of the violent and serious nature of these offenses, we find no extraordinary circumstances or abuse of discretion warranting any modification (*see People v Stearns*, 72 AD3d 1214, 1219 [2010], *lv denied* 15 NY3d 778 [2010]; *People v Lopez-Aguilar*, 64 AD3d 1037, 1038 [2009], *lv dismissed* 13 NY3d 940 [2010]).

Finally, County Court (Drago, J.) did not abuse its discretion in denying defendant's CPL 440.10 motion without a hearing. In support of the motion, defendant contended that he had newly discovered evidence showing that a police officer's trial testimony about surveillance cameras near the bar was inaccurate, and that he received ineffective assistance of counsel. Even if defendant had demonstrated that the surveillance cameras he now claims are located in the area could not have been discovered before his trial by the exercise of due diligence (*see People v Watkins*, 49 AD3d 908, 910 [2008], *lv denied* 10 NY3d 965 [2008]; *People v Chaney*, 298 AD2d 617, 620 [2002], *lv denied and dismissed* 100 NY2d 537 [2003]), his assertion that surveillance footage from these cameras would have shown him walking peacefully with the victim is speculative and wholly based on his own assertions (*see People v Glanda*, 18 AD3d 956, 960-961 [2005], *lv denied* 6 NY3d 754 [2005]; *People v Morris*, 299 AD2d 655, 657 [2002], *lv denied* 99 NY2d 583 [2003]). Even if such footage were recovered, the overwhelming evidence of defendant's guilt makes it highly unlikely that the verdict would have been different (*see* CPL 440.10 [1] [g]; *People v Terry*, 44 AD3d 1157, 1159 [2007], *lv denied* 10 NY3d 772 [2008]; *People v Hogencamp*, 300 AD2d 734, 736 [2002]). Defendant did not demonstrate that the cameras he allegedly located after the trial were also present at the time of the offenses; thus, he did not show that the officer's testimony constituted a misrepresentation, nor does anything in the record suggest that the prosecutor or the court was aware of the alleged falsity (*see* CPL 440.10 [1] [b], [c]; *People v Passino*, 25 AD3d 817, 818-819 [2006], *lv denied* 6 NY3d 816 [2006]).

Finally, defendant asserts that he received ineffective assistance in that, among other things, his counsel allegedly failed to investigate his claim that police incorrectly identified the apartment where the events occurred. However, defendant did not " 'demonstrate the absence of strategic or other legitimate explanations' " for the alleged deficiency (*People v Caban*, 5 NY3d 143, 152 [2005], quoting *People v Rivera*, 71 NY2d 705, 709 [1988]); counsel could have made a strategic choice not to draw attention to defendant's damaging admission that he broke

into an apartment while he was with the victim on the night in question. The record does not support defendant's claim that his counsel lied to him and conspired against him, but does reveal that counsel made appropriate motions and cogent objections, conducted vigorous examination and cross-examination, and obtained acquittals on two of the charges. Defendant received "meaningful representation and, therefore, the effective assistance of counsel" (*People v Morehouse*, 5 AD3d 925, 927 [2004], *lv denied* 3 NY3d 644 [2004]; *see People v Weatherspoon*, 86 AD3d 792, 793-794 [2011], *lv denied* 17 NY3d 905 [2011]); accordingly, his motion was properly denied.

Peters, J.P., Rose, Lahtinen and McCarthy, JJ., concur. Ordered that the judgment and order are affirmed.