### Supreme Court, Appellate Division
### Third Judicial Department

Decided and Entered:   July 24, 2014                        104644
_____

THE PEOPLE OF THE STATE OF
    NEW YORK,
                        Respondent,

        v                                        MEMORANDUM AND ORDER

ADAM M. HADFIELD,
                        Appellant.
_____


Calendar Date:   May 30, 2014

Before:  Stein, J.P., McCarthy, Egan Jr., Lynch and Clark, JJ.

_____


        John A. Cirando, Syracuse, for appellant.

        Alexander Lesyk, Special Prosecutor, Norwood, for
respondent.

_____


Egan Jr., J.

        Appeal from a judgment of the County Court of St. Lawrence
County (Richards, J.), rendered October 7, 2011, upon a verdict
convicting defendant of the crimes of criminal sexual act in the
first degree (five counts), unlawful imprisonment in the first
degree, menacing in the second degree, criminal mischief in the
fourth degree, kidnapping in the second degree, sexual abuse in
the first degree, rape in the first degree and driving while
intoxicated.

        Defendant was charged in a 13-count indictment with
criminal sexual act in the first degree (five counts), unlawful
imprisonment in the first degree, menacing in the second degree,
reckless endangerment in the first degree, criminal mischief in
the fourth degree, kidnapping in the second degree, sexual abuse

in the first degree, rape in the first degree and driving while intoxicated.  Count 1 of the indictment — charging criminal sexual act in the first degree — pertained to defendant's sexual contact with victim A in March 2008; the remaining counts of the indictment related to defendant's conduct with respect to victim B in July 2009.  The matter proceeded to trial in July 2011 and, during the course thereof, defendant tendered proof in support of his affirmative defense of not guilty by reason of mental disease or defect.  Upon defense counsel's motion at the close of the People's case, County Court dismissed the reckless endangerment count and, at the close of all proof, the jury returned a verdict finding defendant guilty of the remaining charges.  Defendant thereafter was sentenced to an aggregate prison term of 53 years to be followed by a lengthy period of postrelease supervision.[1]  This appeal ensued.[2]

We affirm.  Initially, we reject defendant's assertion that County Court erred in finding that he was competent to stand trial.  "The key inquiry in determining whether a criminal defendant is fit for trial is 'whether he [or she] has sufficient present ability to consult with his [or her] lawyer with a reasonable degree of rational understanding — and whether he [or she] has a rational as well as factual understanding of the proceedings against him [or her]'" (People v Phillips, 16 NY3d 510, 516 [2011], quoting Dusky v United States, 362 US 402, 402 [1960]; see CPL 730.10 [1]).  The People bear the burden of proving a defendant's competency by a preponderance of the evidence (see People v Surdis, 77 AD3d 1018, 1018 [2010], lv denied 16 NY3d 800 [2011]), and the trial court's determination in this regard "is accorded considerable deference" (People v

_____

    [1]  Defendant's maximum term of imprisonment was reduced by operation of law to 50 years.

    [2]  While incarcerated at the St. Lawrence County Correctional Facility awaiting trial in this matter, defendant assaulted another inmate.  Following a nonjury trial, defendant was convicted of assault in the second degree and, upon appeal, this Court has affirmed the judgment of conviction (People v Hadfield, ___ AD3d ___ [appeal No. 104645, decided herewith]).

Kendall, 91 AD3d 1191, 1192 [2012]; see People v Phillips, 16
NY3d at 517; People v Brown, 110 AD3d 481, 482 [2013], lv denied
22 NY3d 1039 [2013]).  Notably, the mere fact that a defendant
may suffer a memory loss does not automatically trigger a finding
of incompetency (see People v Bates, 83 AD3d 1110, 1112 [2011],
lv denied 21 NY3d 1072 [2013]; People v Surdis, 77 AD3d at 1018 n
1).

     Here, defendant was evaluated by two psychiatrists
(testifying on behalf of the People) and one psychologist
(testifying on behalf of defendant).  All three evaluators found
that defendant appreciated the nature and severity of the charges
against him and understood the roles of the trial judge, the
jury, the prosecutor and defense counsel.  As for defendant's
ability to consult with his attorney, one of the People's experts
acknowledged that defendant's claimed memory lapses "would make
[assisting in his own defense] more difficult," and the
psychologist who testified on behalf of defendant opined that
defendant's asserted "lack of recollection [might] compromise his
ability to testify relevantly or realistically challenge
prosecution witnesses."[3]  Despite these concerns, two of the
three experts found defendant to be competent to stand trial, and
having reviewed the evaluators' respective reports and
conflicting testimony, we discern no basis upon which to disturb
County Court's finding that defendant indeed was fit for trial.

     Defendant next contends that his convictions are not
supported by legally sufficient evidence and, further, are
against the weight of the evidence.  Again, we disagree.  Insofar
as is relevant here, count 1 of the indictment required the
People to establish that defendant engaged in anal sexual conduct
with victim A by forcible compulsion (see Penal Law § 130.50
[1]).  Victim A, who had been dating defendant for three or four
months at the time the incident occurred in March 2008, testified
that she awoke on the morning in question to find defendant
attempting to have sex with her.  When victim A refused his

---

     [3]  The psychologist conceded, however, that there were
"other ways in which [defendant] could assist counsel in
challenging statements made by a witness."

advances, defendant pinned her arms above her head, removed her underwear and, despite her continued protests, engaged in anal sex with her. Victim A further testified that, during this encounter, defendant's hand or body pushed her head into her pillow, making it difficult for her to breathe. Such testimony, in our view, was sufficient to establish the element of forcible compulsion (see Penal Law § 130.00 [8] [a], [b]), as well as the remaining elements of the crime. To the extent that defendant now deems victim A's account of this incident to be dubious — citing, among other things, her delay in reporting the crime — these issues were fully explored at trial, and we defer to the jury's resolution of the underlying credibility issues (see People v Littebrant, 55 AD3d 1151, 1154-1155 [2008], lv denied 12 NY3d 818 [2009]).

With respect to the counts pertaining to victim B (counts 2-3 and 5-13), victim B testified that she and defendant began dating in May 2009. On the evening of July 14, 2009, she and defendant went to a local bar — known as the Trackside — around 10:00 p.m., where they remained for approximately 90 minutes. During this time period, defendant consumed "quite a few" beers and/or mixed drinks and "a lot of shots" of alcohol. Defendant and victim B then left the Trackside, purchased a quantity of beer and went to a birthday party for her ex-boyfriend. During the early morning hours of July 15, 2009, defendant and victim B, both of whom had continued to drink at the birthday party, returned to the Trackside, where they remained until closing.

Although defendant and victim B apparently had enjoyed a cordial evening up until this point, the two began to argue upon returning to victim B's residence in the Town of Pitcairn, St. Lawrence County. When victim B indicated that she was going to sleep on the couch, defendant became upset, prompting victim B to decide to leave the premises. Defendant, however, would not allow victim B to leave; after blocking her exit, taking her cell phone and shoving her, defendant pinned victim B to the ground with his knees against her shoulders, took out a pocket knife and dragged the blade across her face — all before pressing the blade to her throat and informing her that she "[had] to die" and that "he was going to kill [her]." Eventually, victim B persuaded defendant to release her so that she could let her animals

outside to relieve themselves. After expressing concern over the welfare of one of her dogs, victim B convinced defendant to allow her to venture outside as well, whereupon she managed to get to her vehicle and flee. Defendant gave chase, however, and — once he caught up with victim B — rammed her vehicle with his truck and forced her off the road. Defendant then punched out the driver's side window of victim B's vehicle, pulled her out of the car and "[t]ossed" her into the front passenger seat of his truck.

After reentering the truck, defendant reclined the front seat and pinned victim B down by placing his elbow to her collarbone. Following a brief struggle over the knife, which victim B succeeded in tossing out of the window of the truck, defendant began driving. Approximately 10 minutes later, victim B was allowed to sit up, at which point she recognized landmarks that placed her whereabouts in St. Lawrence County. As defendant continued to drive, they passed another motorist, who victim B recognized as a friend, prompting her to launch her hands and face out of the driver's side window and yell for help; defendant responded, "Great, now the cops are going to be called." Although victim B's friend turned around and began to follow defendant's truck, defendant "started driving faster" and the other vehicle faded from sight. As victim B pleaded for defendant to take her home, they approached an intersection with a stop sign, and victim B used this opportunity to "kick the shifter [lever] out of gear," exit the vehicle and begin running. After only "two or three steps," however, defendant caught up with victim B, informing her that "now [she was] really going to have to die." Defendant then dragged victim B back the truck and again began driving.

Eventually, defendant pulled over and announced that he wanted to get some sleep. Despite his stated intention, defendant thereafter grabbed victim B's breast before straddling her, pinning her down to the passenger seat and attempting to persuade her to perform oral sex. When victim B refused, defendant — on three separate occasions — placed his hands around victim B's throat and choked her; each time that victim B would gasp for air, defendant would force his penis into her mouth. Defendant then removed victim B's pants and forcibly engaged in

vaginal and anal sex with her.[4]

In the interim, victim B gained access to her cell phone and surreptitiously placed a call to 911. Eventually, victim B was able to provide clues as to her location, and defendant was successfully pulled over and apprehended by State Trooper Christopher Sharpe between the Towns of Fowler and Gouverneur in St. Lawrence County. Sharpe testified that he smelled alcohol "[a]s soon as [he] opened the door" to defendant's truck, State Trooper Michael Tyler testified that he observed two empty beer bottles — one next to and one inside of defendant's truck — and State Trooper Scott Freeman observed that defendant had "glassy eyes," a red face, impaired motor coordination and "a strong odor of alcohol emanating from him." Once back at the station, defendant did not respond to a request to submit to a chemical test. According to the experts who testified on defendant's behalf, defendant had a well-documented history of both alcohol abuse and alcohol-induced blackouts.

The foregoing proof, in our view, is legally sufficient to sustain defendant's conviction of each of the charged crimes. Although defendant specifically takes issue with the jurisdictional element of counts 7 through 12 — contending that there is insufficient proof to establish that the subject crimes occurred in St. Lawrence County — we disagree. CPL 20.40 (4) (g) provides that "[a]n offense committed in a private vehicle during a trip thereof extending through more than one county may be prosecuted in any county through which such vehicle passed in the course of such trip." Inasmuch as the record establishes that the events in question began and ended in St. Lawrence County, venue was properly established by a preponderance of the evidence (see People v MacDonald, 63 AD3d 1520, 1521-1522 [2009], lv denied 13 NY3d 746 [2009]; People v Buccina, 62 AD3d 1252, 1253-1254 [2009], lv denied 12 NY3d 913 [2009]; People v Curtis, 286 AD2d 901, 902 [2001], lv denied 97 NY2d 728 [2002]).

---

[4] Subsequent DNA testing found evidence of defendant's sperm in victim B's anus and vagina.

As for defendant's weight of the evidence claim, although defendant contends that he carried his burden of establishing that he was not guilty by reason of mental disease or defect (see Penal Law §§ 25.00 [2]; 40.15), the case law makes clear that "[w]here conflicting expert testimony is presented, the question [of] whether the defendant suffered from a mental disease or defect at the time of the commission of the crime is for the fact finder, who may accept or reject the opinion of any expert" (People v Capela, 97 AD3d 760, 761 [2012], lvs denied 19 NY3d 1024 [2012] [internal quotation marks and citation omitted]; see People v Demagall, 114 AD3d 189, 192 [2014]).  Here, the People and defendant each presented experts who, in turn, offered conflicting testimony as to defendant's mental health status and his capacity to comprehend the nature and consequences of his actions with respect to the incident involving victim B.  In this regard, defendant's expert opined that defendant suffers from a borderline personality disorder and, when confronted with intense stress, will experience disassociative episodes, i.e., he will become "more than one person," during which time "[h]e doesn't know what he's doing."  According to defendant's expert, defendant was experiencing such an episode during the early morning hours of July 15, 2009 when he abducted and brutalized victim B and, therefore, defendant "did not have the ability to comprehend the nature and consequences of his behavior or [to know] that it was wrong."

The People's expert, however, although acknowledging that defendant has certain mental health issues, primarily focused upon defendant's well-documented history of alcohol and/or substance abuse, noting that defendant's underlying anger management and impulse control issues are exacerbated by his drinking.  Based upon his interview with defendant, the People's expert concluded that defendant did not experience disassociative episodes except in relationship to alcohol-induced blackouts.  Thus, even assuming that defendant's professed memory loss on the morning in question was genuine, the People's expert attributed such memory impairment to defendant's level of intoxication – as opposed to a true disassociative episode.  Further, defendant's underlying history, coupled with his conduct immediately

preceding and following his apprehension,[5] led the People's expert to conclude that defendant "had substantial capacity to know what he was doing[,] . . . knew the nature and consequences of his action[s] . . . [and] also had substantial capacity to appreciate the wrongfulness of his action[s]." As we discern no "serious flaw" in the opinion offered by the People's expert, we are unable to conclude that the jury, in crediting such testimony, "failed to give the evidence the weight it should be accorded" (People v Tillman, 260 AD2d 656, 657 [1999] [internal quotation marks and citation omitted]).

Defendant's remaining contentions do not warrant extended discussion. Although defendant asserts that County Court erred in allowing two of the troopers to testify as to their prior law enforcement encounters with defendant, we note that the testimony attributable to State Trooper Dean White was elicited by defense counsel on cross-examination. As to the testimony given by Sharpe, defense counsel promptly objected and County Court, in turn, sustained the objection and issued an appropriate curative instruction. Under these circumstances, we do not find that the claimed evidentiary errors deprived defendant of a fair trial.

Nor are we persuaded that defendant was denied the effective assistance of counsel. The claimed error with respect to eliciting White's testimony is insufficient to demonstrate that counsel was ineffective and, to our analysis, the record discloses valid strategic reasons for not requesting a severance of the counts set forth in the indictment. Not only would such a motion likely have been futile but, by trying the offenses as to victims A and B together, defendant was able to assert his affirmative defense of not guilty by mental disease or defect as to both the 2008 and 2009 offenses — notwithstanding the virtual absence of testimony regarding his mental state at the time he committed the crime against victim A in 2008. Defendant's

_____

[5] After defendant was apprehended, defendant was observed banging his head against the side of his truck and attempting to bite a dog. According to the People's expert, this "overly dramatic" behavior was defendant's attempt at "trying to look crazy."

remaining arguments on this point, as well as his claim that the sentence imposed was harsh and excessive, have been examined and found to be lacking in merit.

Stein, J.P., McCarthy, Lynch and Clark, JJ., concur.


ORDERED that the judgment is affirmed.




ENTER:

Robert D. Mayberger
Clerk of the Court